**AUTOSALES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.**

No. 243.

Circuit Court of Appeals, Second Circuit.

July 28, 1930.

Edward G. Zimmer, of New York City (Edward J. McPike, of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John Vaughan Groner, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before L. HAND, CHASE, and MACK, Circuit Judges.

MACK, Circuit Judge.

This appeal from an order of redetermination of the Board of Tax Appeals involves assessments of income and profits taxes for the years 1917, 1918, and 1919, the validity of which depends upon whether or not respondent and the Board have correctly determined the "invested capital" of a large business enterprise which prior to those years had gone through a series of mutations in its corporate and financial structure.

The present petitioner, Auto Sales Corporation, was organized November 5, 1917, and immediately took over all the assets of the Autosales Gum & Chocolate Company in consideration of the issue of its stock of the par value of some $6,500,000. The chocolate company theretofore, and petitioner thereafter, operated public weighing and vending machines in railroad terminals and other public places, on annual, automatically renew-

able franchises. The chocolate company, however, was not a simple corporate unit; upon its organization in 1911, it had acquired the properties and/or stock of some thirty companies, among which was the entire capital stock of the Weighing & Sales Company, hereinafter called the weighing company. This latter company was in itself an affiliated group through stock ownership of five pre-existing companies; it was engaged in the manufacture of vending machines which it caused to be operated under similar yearly franchises. A detailed analysis of the financial structure of the weighing company is deferred; it suffices here to state that, because of an outstanding mortgage trust deed, its corporate existence was continued after its entire capital stock had been acquired by the chocolate company. That company took over the contracts and assumed the obligations of the weighing company. It included the latter's property among its own assets, and, on its books, carried all of the weighing company stock at $1.

Section 208 of the Revenue Act of 1917 (40 Stat. 306) and section 331 of the Revenue Act of 1918 (40 Stat. 1095) both provide that if, on a reorganization or change of ownership after March 3, 1917, the control of the business remains in the hands of the same parties, partnerships, or companies, the invested capital of the new company, as to the assets transferred (with certain exceptions here immaterial), shall be computed as though in effect such reorganization or change in ownership had not been effected. Both petitioner and respondent concede the applicability of these two sections; we therefore proceed with the consideration of the case as though petitioner had never been organized and the stock of the weighing company were still owned by petitioner's predecessor, the chocolate company.

In computing its invested capital for the years in question, petitioner included the sum of $1,348,557.50 as the value of the weighing company stock held by it. This sum was disallowed by respondent, who treated the companies as affiliated, refused to include the value of the alleged intangible assets of the weighing company, and allowed, as an addition to the invested capital of the affiliated group, on account of the weighing company, $160,661.67, which was the admitted value of the weighing company's machines. On appeal to the board, petitioner contended that it was entitled to have included in its invested capital, as tangible property, the cash value of the shares of stock of the weighing company. The board, however, affirmed respond-

ent's determination on the theory that the companies were affiliated and that therefore the value of the stock could not as such be included; further that, from the evidence before it, it was impossible to determine the invested capital actually contributed by the weighing company to the affiliated group. The applicable sections of the Revenue Acts of 1917 and 1918 are set forth in a footnote,[1]

---

[1] Revenue Act of 1917, c. 63, 40 Stat. 300:

"Sec. 207. That as used in this title, the term 'invested capital' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title 'invested capital' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title, nor money or other property borrowed, and means, subject to the above limitations:

"(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year. * * *"

Revenue Act of 1918, c. 18, 40 Stat. 1057:

"Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital. * * *

"(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests. * * *

"Sec. 325. (a) That as used in this title—

"The term 'intangible property' means patents, copyrights, secret processes and formulæ, good will, trade-marks, trade-brands, franchises, and other like property;

"The term 'tangible property' means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property;

"The term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise. * * *

"Sec. 326. (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section):

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus. * * *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;

"(4) Intangible property bona fide paid in for

and the many Treasury Regulations involved will be duly considered.

Petitioner now contends: (1) That the chocolate company and the weighing company were not affiliated corporations, because the latter company was not actively engaged in business, all of its machines and franchises being then operated by the chocolate company; (2) that therefore petitioner is entitled to have included in its invested capital the weighing company stock valued as tangible property; (3) that the value of such stock is to be determined by the value of the assets of the company; and (4) that, even if the companies be considered as affiliated, the share contributed by the weighing company to the consolidated invested capital may be determined from the present record to be at least $1,409,300. Respondent contends: (1) That the companies were affiliated corporations during the taxable years in question; (2) that therefore the invested capital is the consolidated invested capital of the affiliated group to be computed by ascertaining the invested capital of the constituent corporations and deducting any duplications or intercompany items, including stock held inter sese; and (3) that, since there is nothing in the record from which a determination of the invested capital of the weighing company may be made, respondent's determination must be accepted.

█ 1. The primary question of affiliation may be readily decided. The sole basis for arguing against a statutory affiliation is that the weighing company, all of whose stock was owned and all of whose property and franchises controlled and/or operated by the chocolate company, was not active. The logical basis for, and the legislative history of, the requirement of consolidated returns by "affiliated corporations," has only recently been quite fully examined in United States v. Cleveland, Painesville & Eastern R. R., 42 F.(2d) 413 (C. C. A. 6th) it is clear from that opinion that within section 240(a) of

the Revenue Act of 1918 and section 1331 of the Revenue Act of 1921 (retroactively made a part of the act of 1917), any subsidiary corporation, substantially all of whose stock is owned by another corporation, must be deemed to be affiliated with the latter. That the subsidiary is wholly inactive and but a bookkeeping department of the parent company is immaterial, even under the act of 1917, which alone specifies that the corporations must be "engaged in the same or a closely related business." Indeed, this is the very situation in which the economic unity of the two corporate entities is most apparent and the arbitrary apportionment of income, against which the statute is directed, most easily effectuated. See United States v. Cleveland, etc., R. R., supra. Nor does the fact that legal continuance of the inactive subsidiary was dictated by the requirements of an outstanding security obligation take the enterprise out of the statutory definition. See Lavenstein Corp. v. Commissioner, 25 F.(2d) 375 (C. C. A. 4th); Utica Knitting Co. v. United States, Ct. Cl., decided May 6, 1929. We are entirely clear that within the taxable years in question the chocolate company and the weighing company were affiliated corporations; a consolidated return was required, and the invested capital of the affiliated group must be determined therefrom.

2. The consolidated taxable net income of affiliated corporations may be ascertained without great difficulty; the gross incomes are pooled, the various items classified for deduction purposes, profit from intercompany transactions eliminated, and various inventory adjustments, simple in theory but intricate in application, are made. See Staub, Consolidated Returns, in Haig, The Federal Income Tax, pp. 188, 195, 200. The determination of consolidated invested capital, even in the simple case of a single parent corporation and wholly owned subsidiary, is, however, replete with difficulties both in theory and practical operation. Broadly speak-

stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917. * * * "

Revenue Act of 1921, c. 136, 42 Stat. 227 (26 USCA § 1067):

"Sec. 1331. (a) That Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

"(b) For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation

or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: Provided, That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital: * * * (c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917."

ing, such consolidated invested capital represents the aggregate of the invested capital of each of the affiliated companies; in practice, however, the determination of this aggregate raises thorny questions as to the treatment of inadmissible assets (cf. Reg. 45, arts. 815–817; Revenue Act of 1918, § 325), the allocation of the undistributed surplus of each company, and, as in the instant case, the valuation of the stock of the subsidiary owned by the parent and acquired either for more or less than its book value, in exchange for tangible and/or intangible property, obligations and/or stock of the parent company. We need in this opinion deal only with the last of these questions.

If company A owns stock or bonds of company B, and the two companies are not affiliated within the statutory definition, such stock or bonds may be included as tangible property in the invested capital of company A.[2] If, however, there is affiliation, the par as well as the market value of the stock of the subsidiary so owned is immaterial; the invested capital of the parent is separately computed and the amount to be added thereto in respect of the subsidiary is determined in accordance with the Regulations. See Reg. 45, art. 864.[3] If the subsidiary's stock

[2] If such stock or bonds had been received in consideration of the issue of company A's own stock, their value would be deemed, under section 207 of the act of 1917 and article 53 of Regulations 41, to be either their cash value on January 1, 1914, or the par value of such company A stock, whichever was the lowest. Under section 326(a) of the 1918 act, their value, unless clearly shown to be greater, would be limited to the par value of such company A stock.

[3] This article sets forth the general theory of computing the consolidated invested capital of affiliated corporations, and directs the preparation of a consolidated balance sheet. "In preparing such a balance sheet all intercompany items, such as intercompany notes and accounts receivable and payable, should be eliminated from the assets and the liabilities, respectively, and proper adjustments should be made in respect of intercompany profits and losses reflected in inventories which at the beginning or end of the taxable year contain merchandise exchanged between the corporations included in the affiliated group at prices above or below cost to the producing or original owner corporation. Such consolidated balance sheet will then show (a) the capital stock of the parent or principal company in the hands of the public; (b) the consolidated surplus belonging to the stockholders of the parent or principal company; and (c) the capital stock, if any, of subsidiary companies of which substantially all the capital stock is not (sic) owned or controlled by the parent or principal company, together with the surplus, if any, belonging to such minority interest. In computing consolidated invested capital the starting point is furnished by the total of the amounts shown under (a), (b), and (c), above."

Thereafter all deductions and adjustments for inadmissible assets are to be made on the basis of the consolidated return in the same manner as in the case of an individual corporate return. Cf. Lybrand, The Accounting of Industrial Enterprises, 7 Journ. Accountancy, pp. 32–40, 111–121, 224–236; Webster, Consolidated Accounts, 28 Id. 258–272.

was acquired by the parent company for cash, the cash so paid is to be the basis in determining, for the purpose of computing the consolidated invested capital, the value of the property acquired. Reg. 45, art. 867. If, however, such stock was acquired in exchange for the stock of the parent company, the amount to be included in the consolidated invested capital [4] is to be computed as though

[4] The amount which may be included in the invested capital of either an individual corporation or an affiliated group in respect of intangible property issued for stock or shares is further limited by statute.

Section 207(a) of the Act of 1917 (40 Stat. 306) provides: " * * * Intangible property, bona fide purchased, prior to March third, nineteen hundred and seventeen, for and with * * * shares in the capital stock of a corporation * * * in an amount not to exceed, on March third, nineteen hundred and seventeen, twenty percentum * * * of the total shares of the capital stock of the corporation, shall be included in invested capital at a value not to exceed * * * the par value of such stock."

Section 326(a) of the Act of 1918 (40 Stat. 1092) provides that there may be included in invested capital:

"(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest;

"(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917 * * * Provided, That in no case shall the total amount included under paragraphs (4) and (5) exceed in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year. * * * "

The effect of these sections on the determination of the invested capital of an affiliated group is set forth in Reg. 41, art. 58, and Reg. 45, art. 865, which provide: "The * * * limitation upon intangible property purchased * * * for * * * stock * * * of the corporation * * * applies not to each item or class of intangible property separately but to the aggregate amount of all such property so purchased. Such intangible property may be included in the invested capital only up to an amount not exceeding 20% of the total stock or shares of the corporation * * * on March 3, 1917, even though the aggregate amount of such intangible property be greater than such 20% of the par value of the total stock." Reg. 41, art. 58.

"Art. 865. *Affiliated Corporations; Intangible Property Paid in.*—(1) In respect of corporations whose affiliation is in the nature of parent and subsidiary companies: (a) In the case of intangible property bona fide paid in for stock or shares prior to March 3, 1917, there may be included in invested capital an amount not exceeding the actual cash value of such property at the time paid in, or the par value of the stock or shares issued therefor, or in the aggregate 25 per cent. of the par value of the total stock or shares of the consolidation outstanding on March 3, 1917 (determined as indicated in the items (a) and (c) in article 864), or in the aggregate 25 per cent. of the par value of the total stock or shares shown on the consolidated balance sheet, being the amount of the capital stock included in items (a) and (c) in article 864 at the beginning of the taxable year, whichever is lowest. * * * "

Although their meaning is not happily expressed, the clear purport of these articles, in view of their interrelation with the remainder of the Regulations and in the light of the purpose for which they were promulgated, is that, where two corporations are

the net tangible and intangible assets of the subsidiary had been acquired instead of its stock. Reg. 45, art. 868. The value of the net rather than the gross tangible and intangible assets is taken because the real value of the business entity, acquired in exchange for stock, is represented by the difference between its assets and liabilities. Beyond this, the Regulations fail to shed light except for the inference that the other rules relating to the determination of the invested capital of a single corporation are generally applicable to affiliated companies.

■ 3. The detailed facts of the case at bar reveal the difficulties engendered by these omissions: The entire stock of the weighing company, the affiliated subsidiary, was acquired by the chocolate company, not for cash alone or for stock of the parent alone, but for a mixed aggregate of cash, chocolate company stock and bonds, and the assumption by it of certain of the weighing company's obligations. The latter had outstanding $406,800 worth of bonds secured by a mortgage of all its present and future property to the Empire Trust Company, under which there were to be made annual sinking fund payments of $20,000. The chocolate company deposited with the trustee $375,000 in cash, $475,000 of its bonds, and $225,000 par value chocolate company stock, and received in return the entire capital stock of the weighing company. Shortly thereafter the weighing company leased and/or assigned, subject to the mortgage, all of its machines, contracts, and other assets to the chocolate company which agreed to discharge the obligations under the trust deed. The problem presented therefore is how to allocate these items in order to determine the contribution in respect of the weighing company to be made to the consolidated invested capital of the affiliated group.

It is apparent from the record that the cash and chocolate company stock and bonds thus paid for the weighing company stock were intended in the first place to assure payment of the latter's outstanding bonds and the satisfaction of the mortgage. The cash therefore should, or in any event could, properly be deemed to be allocated, first, to the payment of these bonds; the requirements of the annual sinking fund payments would exhaust it within the twenty years that the bonds had to run. This left for the purchase of the weighing company's stock the $475,000 of chocolate company bonds and the $225,000 of its stock. In our judgment, such an acquisition of the subsidiary's stock for the bonds and stock of the purchasing parent is to be assimilated to the case of acquisition for the purchaser's stock alone (article 868) rather than to the case of a purchase entirely for cash (article 867). Accordingly there may be added to the consolidated invested capital, in respect of the weighing company, the value of its net tangible and intangible assets, except that as to the latter the statutory limitation must be applied to the aggregate intangibles of both parent and subsidiary paid in for the parent's stock. See note 4, supra.

What was the value of such net tangibles and intangibles? As heretofore stated, the weighing company was in itself an affiliation of six companies; but the record does not disclose whether or not, at the time of affiliation with the chocolate company, this original affiliated group had been merged in the weighing company; that is, whether their assets had become part of the assets of the weighing company. The only evidence is a consolidated balance sheet of these companies; but again it is not entirely clear, assuming that there had been no merger, whether or not the separate assets of the weighing company were included in this consolidated balance sheet. Since the burden throughout is on petitioner, we must assume against it either that there had been a merger of the weighing company and its five subsidiaries and that the combined assets are shown in this balance sheet, or that, if there had been no merger, the separate assets of the weighing company are included therein.[5] The con-

affiliated as parent and subsidiary, the limitation on the amount of intangible assets, acquired for stock or shares, which may be included in the invested capital is applied to the consolidated balance sheet of the affiliated group. It should make no difference whether such intangibles were acquired directly by the issuance of parent company stock or indirectly by the acquisition of the stock of the subsidiary for parent company stock; in the latter case, article 868 of Regulations 45 is applicable and the net tangibles and intangibles of the subsidiary are treated as though directly acquired for parent company stock. When the stock of the subsidiary was thus acquired for parent company stock, and

its assets are subject to article 868, the limitations of section 207 and section 326(a) (4) and (5) are computed, not as between the intangible property and outstanding stock of each company, but as between their aggregate intangibles (acquired for stock or shares) and the outstanding stock of both parent and subsidiary in the hands of the public.

[5] The consolidated balance sheet shows an item of "machines" amounting to $160,661.67. In its petition to this court, petitioner sets forth this identical item among the "assets of the Weighing Company," from which the inference may be drawn that the balance sheet included also the weighing company's assets.

solidated balance sheet may be summarized as follows:[6]

### Assets.

Tangibles
Machines ........................ $ 160,000
Leases .......................... 250,000
Current Assets*................ 113,000    $ 523,000
Intangibles
Patents ..................... ..... $ 43,000 .
Franchises, etc................ 1,468,000    1,511,000

$2,034,000

### Liabilities.

Bonded Indebtedness................. $487,000
Current Liabilities*.................. 93,000    580,000

We begin by reducing the liabilities by $375,000, the cash payment made by the chocolate company to be applied to the bonded indebtedness of the weighing company. This gives us the following:

### Assets.

Tangibles ........................... $ 523,000
Intangibles ........................ 1,511,000    2,034,000

### Liabilities. .

Bonded Indebtedness................. $112,000
Current Liabilities................... 93,000    205,000

These figures must next be adjusted in accordance with article 835 of Regulations 42, which provides that, where stock or shares and bonds or other obligations have been issued for a mixed aggregate of tangible and intangible property, it will be presumed, in the absence of satisfactory evidence to the contrary, that the bonds were issued for tangible property and that the stock was issued for the balance of the tangible property, if any, and for the intangible property; the theory being that the vendor of tangibles will ordinarily demand the more definite obligation. There is no evidence whatever in the present record as to the intended allocation of the chocolate company stock and bonds given for the net tangibles and intangibles represented by the weighing company stock. Consequently, the item of tangible assets, $523,000, must be further reduced by $475,000, the amount of chocolate company bonds issued therefor. Bonds are "borrowed capital" within the statutory definition, and may not be included in "invested capital." See Revenue Act of 1917, § 207; Revenue Act of 1918, § 325. This leaves, as net assets of the weighing company to be added to the consolidated invested capital, $48,000 worth of tangibles and the alleged $1,511,000, intangibles.

---

[6] For the purpose of simplicity, all amounts have been stated only in the thousands.

*These items have been corrected so as to exclude intercompany accounts, which properly can have no place in a consolidated balance sheet for tax purposes. See Reg. 45, art. 864.

The tangibles may be included at their actual value (see, supra, note 2);[7] the intangibles, however, are subject to the limitations of section 207(a) of the 1917 act and/or section 326(a) (4) and (5) of the 1918 act, which is applied to the aggregate intangibles of the affiliated group paid in for the parent's stock (supra note 4); that is, the weighing company intangibles are to be added to the intangibles of all the corporations in the chocolate company affiliation, whose stock was similarly acquired, and there can be allowed as an addition to the consolidated invested capital only a part proportionate to the amount of intangibles which will be allowed to the entire group. Here again petitioner has failed to furnish the information necessary for a proper computation of invested capital within this limitation; for there is no evidence in the record as to the value of such aggregate intangibles of the entire chocolate company affiliation and consequently we cannot determine which part, if any, of the weighing company's intangibles may be included in the consolidated invested capital. Nor have we been furnished with data showing the actual cash value of those weighing company assets, at the time acquired, or the par value of the total stock of the consolidation outstanding at the beginning of the taxable year. Both of these items are additional bases for the limitations imposed by section 207(a) and section 326 (a) (4) and (5), and, in the absence of information as to them, we could not, even if we knew the value of the aggregate intangibles, compute the amount of weighing company intangibles to be added, because the

---

[7] We have passed the question whether or not as a matter of law we should, in ascertaining the value of the net tangibles in the weighing company's assets, first marshal all of its tangibles against its liabilities. If this were done, the tangibles, remaining after the $375,000 cash payment had been applied against the bonded indebtedness and the remaining liabilities set off against the tangible assets, would be only $318,000. E. g.:

Tangible assets ....................... $523,000
Bonded indebtedness...................    $487,000
Less cash .............................    375,000

$112,000
Plus current liabilities...............    93,000

Less liabilities ......................;.    205,000    $205,000

Remaining tangibles to be applied.. $318,000

Applying article 835, which requires that, where bonds and stock are issued for a mixed aggregate of tangibles and intangibles, the bonds are to be applied against the tangibles, it will be seen that this entire sum would be absorbed by the chocolate company bonds, which amounted to $475,000, leaving only intangibles which, on this record, cannot be valued.

lowest of the three possible limitations must be taken. Supra, note 4.

Respondent has allowed, in respect of the weighing company's total acquired assets, $160,661.67, apparently for tangibles alone.[8] It is not clear, nor need we determine, how this result was reached. While on the present record we should have found at the most $48,000 as the value of the allowable assets to be included in the consolidated "invested capital," it may well be that respondent had additional facts before him. The burden was on petitioner to demonstrate that the assessment and order of redetermination were prejudicial to it as a matter of law. In our judgment, this burden has not been met.

Having determined that the corporations were affiliated, it might well have sufficed to point out, as did the Board of Tax Appeals, that the record was bare of facts to justify reversing respondent's determination. We have gone further in this opinion, and shown the lack of facts revealed when the statutes and regulations are applied, in order to demonstrate the necessity of making an adequate record before the Board, as a basis for its necessary findings of fact, in these complex tax cases. We cannot go beyond the record in this court; the burden is on petitioner both before the Board and here to prove that the determination of respondent and/or the Board is without any substantial support in that record. Mere charges that such determinations were arbitrary, capricious, or erroneous, supported by information found only in the briefs but not in the record, are of no weight. These criticisms, while not wholly true of the instant case, are applicable in whole or part to the increasing number of cases coming from the Board of Tax Appeals.

Affirmed.

---

[8] Since this is the stated value of the weighing company's machines, the addition allowed was probably limited to tangibles. If so, petitioner has been allowed more than the present record appears to warrant. What, if any, part of the million and a half dollars worth of intangibles would have been allowed is dependent upon the unknown amount of intangibles owned by the other affiliated companies.