ONONDAGA CO. v. COMMISSIONER OF IN-
TERNAL REVENUE.

TEN EYCK CO. v. SAME.

Nos. 320, 321.

Circuit Court of Appeals, Second Circuit.

Argued May 12, 1931.

Decided June 8, 1931.

J. C. Murphy, of Atlanta, Ga., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen., and Dorothy A. Moncure, of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

These petitions involve the same questions of the application of income and profit taxes for the year 1919 and one opinion will suffice. The Board of Tax Appeals made its redeterminations of the taxes due, January 30, 1930, and reviews are sought here under the provisions of the Revenue Act (1926, c. 27, §§ 1001–1003 [26 USCA §§ 1224–1226]).

The petitioners owned the Onondaga Hotel, in Syracuse, and the Ten Eyck Hotel in Albany, N. Y. The United Hotels Corporation is a holding corporation engaged in operating a chain of hotels, and controls the business operation, although not the stock control, of each of the petitioners. March 19, 1920, the United Hotels Company filed a consolidated return for 1919 for nine corporations, including the petitioners, and it disclosed all the facts necessary for the determination of the net income and invested capital of each of the companies reported as

affiliated. On March 13, 1920, the petitioner the Onondaga Company filed an informative return for 1919, which stated that its net income and invested capital was included in the consolidated return of the United Hotels Company. The Ten Eyck Company filed an informative return for 1919 on March 15, 1920, in like effect. From these petitioner the Onondaga Company had a net income of $157,123.20 and $23,866.50 of the total tax liability return was apportioned to this petitioner. The Commissioner ruled the corporations were not affiliated, and ordered separate returns. On July 27, 1923, petitioner the Onondaga Company did so, disclosing a tax liability of $58,276.71. It bore this notation: "Paid tax on consolidated return of United Hotels Company of America $24,649.01 and showed a balance of tax of $33,627.70." This sum paid was refunded.

January 21, 1925, December 4, 1925, and December 23, 1926, waivers were filed by the petitioner extending the time for assessment of taxes to December 31, 1927. These waivers bore the name of the Commissioner and some initials indicating that the Commissioner's name had been signed by the party whose initials appeared. December 15, 1926, the Commissioner mailed a 60-day deficiency letter to the petitioners, stating petitioner's (the Onondaga Company's) taxes for 1919 to be $45,627.44. Similar procedure was followed in the Ten Eyck Company Case.

■ The first question presented is the contention of the petitioners that the Commissioner did not determine a deficiency in taxes within the meaning of section 273 (1) of the Act of 1926, 26 USCA § 1047 (1), and therefore the Board of Tax Appeals did not acquire jurisdiction of the subject-matter. When on March 13, 1920, the petitioner the Onondaga Company filed its return for 1919, which stated that its net income and invested capital were included in the consolidated return filed for the United Hotels Company, it disclosed a tax of $23,866.50. When, on December 15, 1926, the Commissioner determined the petitioner's tax for 1919 to be $45,627.44, there was a deficiency found to be due. Section 239 of the Revenue Act of 1918 (40 Stat. 1081) required, at the time of the return, that the petitioner make a return stating specifically the items of the gross income and the deductions and credits allowed by law. When the Commissioner acted under section 250 (b), 40 Stat. 1083, "as soon as practicable" after the return was filed, he found an amount of tax due of more than the return showed or was paid. The same provision (section 250 (b) was carried into section 250 (b) of the Revenue Act of 1921 (42 Stat. 264), where the amount determined to be due was declared to be a deficiency. These same provisions were carried into sections 271, 273, and 274 of the Revenue Act of 1924 and 1926 (26 USCA §§ 1045, 1047, 1048 et seq., 1048 note et seq.). Section 273 (1) of the Revenue Act of 1926 (26 USCA 1047 (1), says: "The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax. * * *"

Section 274 (a), 26 USCA § 1048 note, authorized an appeal to the Board of Tax Appeals when the Commissioner determines there is a deficiency, and section 283 (b), 26 USCA § 1064 (b), makes section 274 (a) applicable to amounts proposed to be assessed for previous years.

■ Petitioners' informative returns made reference to the consolidated return where all the facts necessary for a determination of the net income and invested capital of the petitioners were disclosed and was therefore a return under section 239 of the Revenue Act of 1918 (40 Stat. 1081). U. S. v. Nat. Tank & Export Co., 45 F.(2d) 1005 (C. C. A. 5); Commissioner v. Stetson & Ellison Co., 43 F.(2d) 553 (C. C. A. 3). It was for this that the deficiency was determined. This was sufficient for jurisdictional purposes.

■ But it is argued that the return of January 27, 1923, disclosed a tax of $58,276.71, and it established the basis on which the deficiency was to be determined. Petitioner the Onondaga Company never agreed that it owed this sum of taxes. Its contention was that it was affiliated with the United Hotels Company, and it insisted upon a consolidated return. The January 27, 1923, return was involuntary and the amount of taxes was in dispute. Such return was supplemental and informative and not a return referred to in section 273 of the Revenue Act of 1926 (26 USCA § 1047). The Commissioner could not assess a tax over and above that disclosed in the original return without first sending his 60-day letter required by section 274 (a), 26 USCA § 1048. Therefore any excess over and above that shown in the consolidated return constituted a deficiency.

The Board therefore had jurisdiction to determine the true deficiency (section 274 (e), 26 USCA § 1048c, and this court has power to review (section 1003 (b) of the Revenue Act of 1926, c. 27 [44 Stat. 9] 109, 110, 26 USCA § 1226 (b). A notation to the return of January 27, 1923, stated that $24,649.01 had been paid, but concededly part of the tax had been refunded, and of course the petitioner was not entitled to credit for the refund. That part refunded the Commissioner was obliged to add to the deficiency. Section 273; Levy v. Com'r (C. C. A. 9) 48 F.(2d) 725, decided April 13, 1931. The determination of the Commissioner is presumed to be correct, and the burden is upon the taxpayer who asserts otherwise. Autosales Corp. v. Com'r, 43 F.(2d) 931 (C. C. A. 2).

Petitioner's return was filed March 19, 1920. Section 250 (d), 40 Stat. 1083, required the assessment to be made within five years from the time the return was filed unless the taxpayer consented with the Commissioner to a later determination, assessment, and collection of the taxes. The later statutes are to the same effect. Section 277 (a) (2) of the Act of 1924, chapter 234, 43 Stat. 253 (26 USCA § 1057 note); section 277 (a) (3), Act of 1926, chapter 27, 44 Stat. 9 (26 USCA § 1057 (a) (3).

▓ Waivers within the time and at three different times were signed extending the time to make assessment until December 31, 1927. These waivers were signed in the name of the Commissioner, but not by him personally. The Commissioner's deficiency letter was mailed December 15, 1926. The contention is that these waivers are invalid because they were not signed personally or by a deputy commissioner. Is the Commissioner's personal signature necessary to the validity of the waiver? Section 278 (c), 26 USCA § 1060 note, provides: "Where both the commissioner and the taxpayer have consented in writing to the assessment of the tax after the time 'prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon."

▓▓ This provision was inserted for administrative purposes. Florsheim Bros. v. U. S., 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. ——; Burnet v. Chicago Ry. Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. ——. The courts have taken the view that an initial signature, not in the Commissioner's handwriting, will be presumed to be authorized within section 250 (d), where it appears in a waiver which has been the subject of official action. The courts have not said that a signature is unnecessary or that it is merely directory, not mandatory. The administrative character of the provision was considered in the Florsheim Case to show that a waiver was not a contract binding the government to the time named in it, and in the Stange Case the administrative character of the provision was mentioned in deciding what power the Commissioner possessed before its enactment. It will be presumed that the signatures to waivers were properly affixed within the meaning of section 250 (d), since it was apparently affixed by some one connected with the Department. The Commissioner acted upon them in sending out the deficiency letter later. The Commissioner may delegate this authority, and the one signing the waiver under such delegation is authorized to do so. And such delegation is sufficient authority. United Thacker Coal Co. v. Com'r, 46 F.(2d) 231 (C. C. A. 1); Trustees for Ohio Coal Co. v. Com'r, 43 F.(2d) 782 (C. C. A. 4); Pantages Theater Co. v. Lucas, Com'r, 42 F.(2d) 810 (C. C. A. 9); Liberty Baking Co. v. Heiner, 37 F.(2d) 703 (C. C. A. 3).

▓ It is argued by the petitioners that they were affiliated with the United Hotels Company in 1919, and that the Commissioner should have accepted the consolidated report. For affiliation of corporations, under section 240 (b) of the 1918 act (40 Stat. 1082), to exist, it must appear that one corporation owned directly or controlled two closely affiliated interests or by a nominee substantially all the stock of the other or others, so that substantially all the stock of the two or more corporations were owned or controlled by the same interest. Commissioner v. A. Hirsch & Co., 30 F.(2d) 645 (C. C. A. 2); Ice Service Co. v. Com'r, 30 F.(2d) 230 (C. C. A. 2). While the United Hotels Company, through its officers, directed the business of both petitioners, it in no way exercised control over the stock which it did not own, and there is nothing to show that any other party or parties controlled the stock held by others. During the year 1919, the American Purchasing Company owned 83.53 per cent. of the stock of the United Hotels Company and no stock in either of these two petitioners. Those owning 21 per cent. of the stock of the Onondaga Company owned no stock in the Ten Eyck Company. The same interests did not own substantially all of the

stock of these two petitioners. The stockholders did not control any of the stock which they did not own, and they may not be regarded as affiliated. Handy & Harman v. Com'r, 47 F.(2d) 184 (C. C. A. 2). The American Purchasing Company is not shown to have controlled any stock which it did not own, and no other parties controlled its United Hotels Company stock. From this it appears that the petitioners are not affiliated with the United Hotels Company, and its consolidated return does not comply with the requirements of the statute.

Orders affirmed.