**FLEITMANN et al. v. BURNET, Com'r of Internal Revenue.**

**No. 5655.**

Court of Appeals of the District of Columbia.

Argued Feb. 17, 1933.

Decided April 3, 1933.

Howe P. Cochran, of Washington, D. C., for appellants.

G. A. Youngquist, Sewall Key, Morton K. Rothschild, C. M. Charest, and Bruce A. Low, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

The appeal in this case involves income taxes for the year 1918 and is taken from a decision of the Board of Tax Appeals. The questions involved are: First, whether a waiver is valid where the commissioner has consented to the waiver but his name is not affixed thereto by him personally or by someone expressly authorized by him to sign his name; and, second, whether section 278 (e) of the Revenue Act of 1924 (43 Stat. 299, 26 USCA § 1062 note) renders invalid waivers executed after the enactment of that act with respect to taxes, the assessment and collection of which had become barred prior to the effective date of the act.

The question embraced in No. 2 above has since the argument been answered against the petitioner and in favor of the United States by the decision of the Supreme Court in McDonnell v. United States, 53 S. Ct. 410, 77 L. Ed. 869 (decided March 13, 1933).

The petitioners are executors of the estate of Herman C. Fleitmann. The latter filed his income tax return for the calendar year 1918 on March 15, 1919. The period of limitation expired on March 15, 1924, unless it was extended by valid waivers. Revenue Act 1921, § 250 (d), 42 Stat. 265. There were five waivers, the last dated September 27, 1929.

It is admitted that the taxpayer signed and returned the respective waivers. The first three received were, however, not signed by the commissioner personally, but the commissioner's name was affixed by Albert Lewis, the head of the Personal Audit Division of the Income Tax Unit. Lewis had been authorized in writing by the commissioner to sign his name to waivers. On the fourth waiver Commissioner Blair's name was affixed by the secretary to H. B. Robinson. Robinson was head of the division in the Income Tax Unit and was duly authorized to sign the commissioner's name. He in turn authorized his secretary to sign. The fifth waiver bore the name of Commissioner Lucas, who succeeded Commissioner Blair, and was followed by that of Collector Anderson at New York City. Anderson had authority to sign the commissioner's name; but, as in the case of Robinson, Anderson authorized his deputy to sign for him. The evidence shows in those cases in which the deputy or the collector did not personally sign the waiver, the rule and custom of the department required and secured his assent thereto as a condition precedent, or, as was testified, the waivers were brought to his desk and his approval had before his secretary or clerk signed in his behalf.

Stress was laid in the argument that the second and third waivers were to all intents and purposes duplications and had only the effect of extending the statute one year rather than two. The Board of Tax Appeals in its findings of facts reached a different conclusion, and we think correctly; but the question is not material since the decision in the Mc-

Donnell Case, supra, if the subsequent waivers were valid. The fact that the waiver was executed after the running of the statute does not render it invalid. Burnet v. Chicago Ry. Equipment Co., 282 U. S. 295, 298, 51 S. Ct. 137, 75 L. Ed. 349.

It will thus be seen that the point in issue narrows itself to the question whether the collection of the deficiency was barred because the signature of the commissioner on the effective waiver was not made either by the commissioner personally or by some one expressly authorized by him. Petitioners' point is that the official of the Revenue Department who had been delegated authority to sign the name of the commissioner had no power under the statute to redelegate this power to a subordinate in his office, and so likewise it is insisted that the evidence will not bear out the claim that they did in fact authorize the signatures appearing on the particular waivers involved in this case.

We have already held [Christopher v. Commissioner, 60 App. D. C. 368, 55 F.(2d) 530, 531] that the waiver need not be signed personally by the Commissioner, and we said in that connection: "The signing of a waiver is a mere ministerial act and may be done by the commissioner personally, or his name may be subscribed by another under his direction."

The Second Circuit Court of Appeals had previously reached the same conclusion (Onondaga Co. v. Commissioner, 50 F.(2d) 397, 399) and in addition said: "The courts have taken the view that an initial signature, not in the Commissioner's handwriting, will be presumed to be authorized within section 250 (d), where it appears in a waiver which has been the subject of official action."

Substantially the same conclusion was reached in the First, Third, Fourth, and Ninth Circuits. See United Thacker Coal Co. v. Commissioner (C. C. A. 1) 46 F.(2d) 231; Liberty Baking Co. v. Heiner (C. C. A. 3) 37 F.(2d) 703; Trustees for Ohio & Big Sandy Coal Co. v. Commissioner (C. C. A. 4) 43 F.(2d) 782; Pantages Theater Co. v. Commissioner (C. C. A. 9) 42 F.(2d) 810.

Nor is the correctness of these decisions questioned. What petitioners really say is that the power delegated by the commissioner can only be exercised by the particular person to whom he delegates it, and therefore the signing by a clerk or secretary of such a person is ineffective. But we think this conclusion cannot be sustained. The tax statutes define the period of limitations, but provide for an extension if both taxpayer and commissioner consent in writing. Doubtless the provision that the consent must be in writing was placed in the statute to prevent the inevitable confusion and contention which otherwise must have arisen. The essential thing from both the point of view of the taxpayer and the government is that the commissioner shall consent, and in view of the thousands of applications for extension and the consequent necessity of waivers, it became physically necessary that the commissioner should delegate authority in this respect to certain of his subordinates. In doing this he delegated authority, and the authority thus delegated became thereby lodged in the particular subordinate just as fully as though he had been named in the act jointly with the commissioner.

Manifestly it thereafter became the duty of the subordinate to pass upon the correctness, validity, and necessity of the waivers received by him in due course, but the proper discharge of this duty was a matter of internal management of the revenue office, as essentially an administrative matter as the assignment by the commissioner of the thousand and one other duties which the act imposes on him and which he in turn assigns to a subordinate. It was for the commissioner to see that the duty was discharged and the authority not abused, but this was a matter with which the taxpayer as such had no concern. However, even if a different view be taken and even if it be admitted that the authority delegated was not redelegable, it will not help petitioner, for the evidence shows, and the board found, the invariable custom and rule of the revenue office provided and required the assent by an authorized deputy before the consent of the commissioner was endorsed physically on the waiver. The waivers received from taxpayers were brought to the desk of a responsible officer who approved the waiver or rejected it, and the evidence of his action was then endorsed thereon by one of his subordinates. This was enough, and we shall assume, in the absence of anything to the contrary, that the rule and practice were duly observed in all respects.

In the instant case both the taxpayer and the government acted throughout upon the validity of the waivers, and the commissioner, in sending out the deficiency notices, recognized and confirmed all that had been done in his behalf. What right, therefore, has the taxpayer to complain? Certainly no harm was done to him. How then can he claim to be hurt, because in a purely administrative matter the commissioner's methods of dispatching business involves a routine the

178

taxpayer does not approve. We find nothing in the statute with relation to waivers to justify the argument they were permitted for the benefit of the taxpayer. On the contrary, it was recognized that, in the vast amount of labor necessary in the correct auditing of the returns, delay was inevitable. Loss of the public revenues, it is true, is avoided by provision for jeopardy assessments; but these were recognized as justifiable only in cases of extreme emergency. The result was that without waivers the government was forced to adopt this unscientific measure or lose its revenues.

Congress, therefore, in the 1921 act and thereafter, expressly recognized waivers as proper to provide the extension of time for assessment and collection of taxes. The primary object was not protection to the taxpayer but to allow the department sufficient opportunity to conveniently and accurately audit returns. In other words, the provision was written into the later statutes to extend the period within which the government, without encountering the bar of the statute of limitations, could conclude its examination of the taxpayer's return to determine whether it required the imposition of additional taxes. So in executing the waiver the taxpayer is not making a contract with the government but is waiving a defense he might otherwise assert. Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335. It would be going very far to say that a provision passed in the interest of the orderly administration of the revenues was of such vital importance to the taxpayer as to permit him to avoid his own deliberate act—his waiver of the limitations period—by laying hold of some minor departure, in itself of no consequence to him, to avoid the payment of his taxes. In saying this we do not forget, of course, that a different case would arise in the failure of the department to observe in all substantial respects the provisions of a statute solely for the benefit of the taxpayer. In the case of such failure the courts would be quick to declare void acts improperly done, but this is so because of the distinction between administrative provisions and mandatory provisions. Here, as we have seen, the mechanics of the waiver provisions are no more mandatory than the provision that the commissioner shall examine the returns or that the tax shall be determined and assessed by the commissioner.

The board was therefore right, and its decision is affirmed.

Affirmed.