PENNSYLVANIA–DIXIE CEMENT COR-
PORATION v. UNITED STATES.
No. M–77.

Court of Claims.
Dec. 7, 1936.

Fred A. Woodis, of Washington, D. C. (Francis R. Lash, of Washington, D. C., of counsel), for plaintiff.

George H. Foster, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff, the Pennsylvania-Dixie Cement Corporation, successor of the Clinchfield Portland Cement Corporation of Virginia, with which it was merged on September, 23, 1926, brings suit to recover additional income taxes assessed against and paid by its predecessor for the years 1914 to 1917, inclusive, amounting to $32,376.91. For convenience the name "plaintiff" is used in the findings as applying to both corporations and will be so used in the opinion.

The plaintiff duly filed its tax returns for the years involved and paid the taxes shown to be due thereon. After various transactions set forth in detail in the findings, not necessary to repeat here, the Commissioner of Internal Revenue, on July 24, 1925, advised plaintiff of a recomputation of its taxes for the years involved. This recomputation showed an overassessment of $63.91 for 1913, an overassessment of $78,788.55 for the year 1917, and small deficiencies for the years 1914 to 1916, inclusive. The Commissioner requested plaintiff to file waivers for the years 1914 to 1916, as a prerequisite to the allowance of additional invested capital for 1917 and subsequent years.

On August 10, 1925, plaintiff executed and filed the waivers requested for the years 1914, 1915, and 1916, effective to December 31, 1925, and on the same date filed an agreement waiving the right to appeal to the Board of Tax Appeals and consenting to the immediate assessment of the deficiencies for those years. The deficiencies were assessed by the Commissioner on October 27, 1925.

The Commissioner had previously, on June 28, 1923, made an additional assessment for the year 1917 of $108,177.50, which amount had not been paid.

On November 9, 1925, the plaintiff received certificates of overassessments for the years 1913 and 1917 in the amounts of $63.91 and $78,788.55, respectively. The overassessment for 1913 which was found to be an overpayment was credited against the taxes due for 1917, and since the balance of the unpaid assessment for 1917 exceeded the overpayment for that year, such balance was abated, reducing the unpaid taxes for the year $28,057.29. Accompanying the certificates of overassessment were notices and demands for the payment of the additional assessment for 1914 to 1916, inclusive, and the unpaid taxes due for 1917 with interest. These amounts, aggregating $32,376.91, were paid by the plaintiff, under protest, on November 16, 1925.

The plaintiff contends that the additional taxes for the years 1914, 1915, 1916, and 1917 were assessed and collected after the expiration of the applicable statutory period of limitation.

The plaintiff's returns for the years 1914, 1915, 1916, and 1917 were filed on February 26, 1915, March 29, 1916, March 26, 1917, and March 29, 1918, respectively. The applicable statutory period of five years within which assessments and collections could be made expired on February 26, 1920, March 29, 1921, March 26, 1922, and March 29, 1923, respectively. The additional taxes for each of the years involved were assessed and collected subsequent to the running of the applicable statutory period of limitation and were therefore erroneously and illegally assessed and collected unless valid waivers were on file extending such statutory period.

At the request of the Commissioner, the plaintiff, on August 10, 1925, as we have seen, executed and filed with the Commissioner a waiver of the period within which assessment might be made for the years 1914, 1915, and 1916 to December 31, 1925. This waiver, duly signed by the plaintiff, was received in the Bureau of Internal Revenue. Mr. H. B. Robinson, the head of the division in which plaintiff's returns were being considered, had a general authorization from the Commissioner to sign the Commissioner's name to waivers. At the direction of Mr. Robinson, an employee working under him signed the Commissioner's name to the waiver, appending Mr. Robinson's initials thereto.

In respect to the year 1917, the Commissioner of Internal Revenue, in his letter notifying plaintiff of the proposed deficiency for that year, advised that a waiver of the statute of limitations would be necessary in case protest was made by plaintiff against the proposed assessment. On February 23, 1923, plaintiff executed and filed in the Bureau of Internal Revenue a waiver for 1917 which by its terms expired on February 23, 1924. The name "D. H. Blair, Commissioner," with the initials "A. H. F." thereunder, appears on the waiver. The additional taxes involved for the

year 1917 were assessed on July 6, 1923, well within the life time of the waiver.

Subsequently, on January 6, 1925, plaintiff, at the request of the Commissioner, filed another waiver for the period in which assessment might be made for 1917 to December 31, 1925. The head of the division in the bureau in which plaintiff's 1917 return was being considered was a Mr. L. T. Lohman, who had a general authorization from the Commissioner to sign his name to income tax waivers. At Mr. Lohman's direction the Commissioner's name was signed to this waiver by a clerk in his office who appended Mr. Lohman's initials thereto.

If the foregoing waivers were valid, all the taxes involved were timely assessed. But the plaintiff says they were not valid for the reason that they were not signed by the Commissioner himself or by some one duly authorized to act for him in that respect. It is contended that the waivers did not meet the statutory requirement of a consent in writing by "both the Commissioner and the taxpayer," but were consents of the taxpayer only; the Commissioner not having indicated his consent to them in the manner required.

We think the plaintiff's contentions are entirely without merit. The head of the division in the Bureau which considered the returns for 1914 to 1916, inclusive, had a general authorization to sign the Commissioner's name to waivers. We think it immaterial whether this official personally placed the Commissioner's name on the waivers for those years or had it placed thereon by one of the clerks of his office working under his directions. It could make no earthly difference to the plaintiff or to any one else whether this official personally signed the Commissioner's name to the waiver or whether that act was performed at his direction by a clerk in his office. In substance the act of the clerk was the act of the official himself. The waiver for the years 1914 to 1916 was therefore valid. The same is true as to the waivers for the year 1917 signed on behalf of the Commissioner under the same circumstances.

Furthermore, and entirely aside from the fact that the Commissioner's name was authoritatively placed on the waivers in the manner stated, we think under the facts disclosed that both the Commissioner and the taxpayer in this case consented in writing to a later determination, assessment, and collection of all the taxes involved. The Commissioner of Internal Revenue on reaching a determination of the deficiencies in question notified the plaintiff of that fact in writing, and also requested plaintiff to execute and return proper waivers which were enclosed. Both the plaintiff and the Commissioner knew that, if postponement of the additional assessments was made, the statute of limitations would run and the taxes could not legally be assessed and collected in the absence of waivers. Knowing this, the plaintiff promptly executed the waivers and returned them to the Commissioner as requested. With such waivers duly signed by the plaintiff on file, the Commissioner, within the time as extended, proceeded to make the assessments and thereafter made timely collection of the taxes. The action of the Commissioner in requesting the waivers in writing, the execution of the waivers by plaintiff and the filing of them with the Commissioner in response to the request, and the subsequent assessment of the taxes by the Commissioner after his authority to do so had expired but for the waivers, clearly meet the requirements of the statute (Revenue Act 1924, § 278 (c), 43 Stat. 300) that "both the Commissioner and the taxpayer" have "consented in writing" to the assessment of the taxes after the limitation prescribed in the statutes. In these circumstances it was entirely immaterial whether the Commissioner's name was ever attached to the waivers either by himself or by some one authorized to act for him in that regard.

Plaintiff makes the further contention that the assessment and collection for the years 1916 and 1917 were erroneous and illegal because the Commissioner did not send the taxpayer the deficiency notice required in sections 274 (a) and 280 of the Revenue Act of 1924 (43 Stat. 297, 301). In respect to this contention it is sufficient to point out that for the year 1916 the Commissioner advised plaintiff of the proposed deficiency on July 24, 1925, and that on August 10, 1925, the plaintiff waived the right of appeal to the Board of Tax Appeals and consented to the immediate assessment of the deficiencies, and that the assessment for 1917 was made prior to the passage of the 1924 Revenue Act, and that the adjustment and reduction of the assessment involved for that year was based on an agreement of the parties entered into at the request of plaintiff. In these circumstances the failure of

the Commissioner to send a 60-day letter was at most an irregularity which did not invalidate the assessment or the collection of the tax for either year.

The plaintiff is not entitled to recover, and it is ordered that the petition be dismissed.