# GRATON & KNIGHT CO. v. UNITED STATES.

### No. K–542.

Court of Claims.
March 1, 1937.

Howe P. Cochran, of Washington, D. C. (C. Leo De Orsay, of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff, a Massachusetts corporation, sues to recover $105,574.93, with interest thereon, on the grounds that the tax exacted by the Commissioner was assessed and collected at a time when the statute of limitations precluded such action.

The tax involved was an additional assessment for the year 1917. It was assessed in August, 1925, and paid in installments on proper dates thereafter. On January 8, 1925, the plaintiff filed a waiver extending the period for the assessment of the tax to December 31, 1925. A refund claim was timely filed and denied by the Commissioner.

The validity of the above waiver is challenged by the plaintiff. The necessity for having the waiver is apparent. Plaintiff sought to establish by oral testimony that the Commissioner did not consent in writing to the waiver, as section 278(c) of the Revenue Act of 1924, 43 Stat. 299, and the corresponding provision of the Revenue Act of 1926, § 278(c), 44 Stat. 59, provide he should do.

The basis for this contention centers upon the signatures placed upon the waiver in the Bureau of Internal Revenue when the same was received for filing. The waiver was not signed individually by the Commissioner. The Commissioner's signature was placed thereon by an employee in the office of L. T. Lohman, at the time head of the Consolidated Returns Division of the Income Tax Unit. Lohman's authority to sign the Commissioner's name to waivers is not challenged, and Lohman's initials were placed upon the waiver beneath the Commissioner's signature by some employee in his office. This fact is disputed but, we think, established.

In view of the numerous precedents involving the validity of waivers provided for and executed under section 278(c) of the Revenue Act of 1924 and similar provisions in other acts (see 26 U.S.C.A. §

276 and note), it is apparent that practically every technical question capable of being raised, affecting their validity, has been adjudicated. Stearns Co. v. United States, 2 F.Supp. 773, 77 Ct.Cl. 264; Id. 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Riverside & Dan River Cotton Mills v. United States, 11 F.Supp. 134, 81 Ct.Cl. 610; Id., 296 U.S. 624, 56 S.Ct. 148, 80 L. Ed. 444; Horuff v. United States, 9 F. Supp. 1016, 80 Ct.Cl. 761; Eclipse Lawn Mower Co. v. United States, 1 F.Supp. 768, 76 Ct.Cl. 354; Florsheim Brothers Co. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542; Stange v. United States, 282 U.S. 270, 51 S.Ct. 145, 75 L.Ed. 335; Sabin v. United States (Ct.Cl.) 44 F.(2d) 70; Fleitmann et al. v. Burnet, 62 App. D.C. 88, 65 F.(2d) 176; Pennsylvania-Dixie Cement Corporation v. United States, 83 Ct.Cl. ——, 17 F.Supp. 196, 200.

The plaintiff seeks to segregate the facts in this case from the record of adjudicated cases, and emphasizes a distinction predicated upon the testimony of Lohman, wherein he said that he did not sign the waiver and can not identify anyone in his office who did so. The witness was testifying some five or six years after the transaction and, manifestly, in view of the numerous transactions of a similar character and the volume and character of the work of his office, it is not at all strange that the details of precisely what was done escaped him.

There is no evidence that Lohman did not *consent* to the waiver and there is positive evidence that as head of the division he adopted what was done. The controversy in this case centers upon the signatures appearing upon the waiver, the plaintiff insisting that the testimony of the witness that he did not personally sign the waiver renders it invalid, obviously upon the contention that he did not consent in writing to it. The very fact that the witness testified that he did not personally sign the Commissioner's name to the waiver, or that he does not recall who did sign, in no way disproves Lohman's consent to the same, for he positively testified that "the letters and the waivers and the communications and the memoranda all came into the office and as we had time we signed them, the girls and myself." In

addition to this fact, it appears of record that this waiver was duly recorded, as having been consented to in writing, in a book kept by the head of this division for the purpose of exemplifying waivers which had been consented to in writing.

The case and the statute involved clearly disclose a practical as well as legal administration. The waiver was treated in precisely the same routine procedure long adopted and enforced in the Bureau. It was on the form prescribed by the Bureau and waivers upon such a form were uniformly consented to as a formality. Hundreds of such waivers reached the witness; to sign them individually would have exacted exclusive application to the task and all that was done by the person who did affix the signatures was the mechanical and ministerial act of designating a previous consent which undoubtedly had been given to the same.

What the court said in the Pennsylvania-Dixie Cement Corporation Case, supra, is apropos: "We think the plaintiff's contentions are entirely without merit. The head of the division in the Bureau which considered the returns for 1914 to 1916, inclusive, had a general authorization to sign the Commissioner's name to waivers. We think it immaterial whether this official personally placed the Commissioner's name on the waivers for those years or had it placed thereon by one of the clerks of his office working under his directions. It could make no earthly difference to the plaintiff or to any one else whether this official personally signed the Commissioner's name to the waiver or whether that act was performed at his direction by a clerk in his office. In substance the act of the clerk was the act of the official himself. The waiver for the years 1914 to 1916 was therefore valid. The same is true as to the waivers for the year 1917 signed on behalf of the Commissioner under the same circumstances."

There is no evidence in this case warranting a finding that what was done in executing the waiver was done without authority, and nothing whatever disclosed which in any way prejudiced plaintiff's rights in the premises. We think finding 3 is sustained by the record, and the petition will be dismissed. It is so ordered.