### HOUSE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 325.

Circuit Court of Appeals, Second Circuit.
June 13, 1938.

Emily Marx, of New York City, for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The principal issue presented by this petition is whether a waiver relied upon by the government is valid. If the waiver is invalid the time within which the tax involved could lawfully be assessed expired before an assessment was made and there is no deficiency.

There was credible evidence before the Board from which it made the following findings:

"Petitioner, a resident of New York, New York, filed his income tax return for 1931 on June 15, 1932, showing a loss of $4,547.70. Under date of June 12, 1934, he signed in triplicate a 'Consent Fixing Pe-

riod of Limitation upon Assessment of Income and Profits Tax', which provided:

"That the amount of any income, excess-profits, or war-profits taxes due under any return (or returns) made by or on behalf of the above-named taxpayer for the taxable year Year 1931 under existing acts, or under prior revenue acts, may be assessed at any time on or before June 30, 1935, except that, if a notice of a deficiency in tax is sent to said taxpayer by registered mail on or before said date, then the time for making any assessment as aforesaid shall be extended beyond the said date by the number of days during which the Commissioner is prohibited from making an assessment and for sixty days thereafter.

"This was received by the Bureau of Internal Revenue, special adjustment section, on June 13, 1934, and on June 14 James W. Carter, chief of the section, signed the name of Guy T. Helvering, Commissioner of Internal Revenue, thereto, adding his own initials and the date. Helvering never saw the consent, but Carter acted under a written authorization received five or six years ago to sign the Commissioner's name to such consents. After he signed the original and the duplicate, but not the triplicate, the original passed from his outgoing basket successively to his secretary, to the special adjustment section's file, and thence to the central file for waivers, which is located in the records division. It is stamped as received by the latter on June 20, 1934.

"Under date of June 19, 1934, a letter, signed 'Chas. T. Russell, Deputy Commissioner', was addressed to petitioner, acknowledging the latter's letter of June 13, transmitting the signed forms, and advising him ' * * * that the consent signed by you has been accepted by the Commissioner.' "

In Bureau practice it is customary for such a letter, accompanied by the triplicate of the consent, to be reviewed by four persons, who indicate their approval of it by writing their initials and the date on the Bureau's copy. The copy of the letter in question bears the initials of Arnold Rowland, auditor of the special adjustment section, dated 6/15/34; of M. H. Dence, special auditor, dated 6/15/34; of C. C. Dannaker, assistant chief of section, dated 6/15/34. After Carter had put his initials on the copy, he sent the original to Russell, whose approval and signature were in practice necessary before the letter could be mailed. The copy is stamped "Mailed in Jun 19, 1934."

Ordinarily, the triplicate of a consent, when executed, is sent to the taxpayer. The triplicate in this case was not sent to petitioner, but was kept in the Bureau files, unsevered from the duplicate. Attached to it was a copy of the letter of June 19, 1934 stamped "received" by the records division on June 20, 1934.

On June 12, 1935, the Commissioner mailed the notice of deficiency.

Thus it appears that the two-year period after the petitioner filed his income tax return within which an assessment had to be made under Sec. 275 (a) of the Revenue Act of 1928, 26 U.S.C.A. § 275 note, expired on June 15, 1934. Two days before that, the waiver signed by the petitioner was received by the government and the next day it was signed in the name of the Commissioner by the chief of the section who had previously been authorized by the Commissioner so to do. If that was enough to make the waiver effective the petitioner must fail. He insists, however, that it was not effective at least until some days later when the letter of notice had been prepared and finally approved for mailing.

The applicable section of the statute, Sec. 276 of the 1928 Act, 26 U.S.C.A. § 276, provides for the waiving of the time within which a tax may be assessed by the consent of the taxpayer and Commissioner in writing "before the expiration of the time prescribed in section 275 for the assessment of the tax * * *".

■ As such a waiver as this is not a contract, any signature by, or in behalf of, the Commissioner is necessary only to fulfill the statutory requirement that the Commissioner consent in writing to "what is essentially a voluntary, unilateral waiver of a defense by the taxpayer". Stange v. United States, 282 U.S. 270, 51 S.Ct. 145, 147, 75 L.Ed. 335. A written consent to the taxpayer's act is all that is needed at most and we now have no occasion to consider whether this condition may not be fulfilled even where the waiver is not signed in behalf of the Commissioner at all. See, however, McCarthy Co. v. Commissioner, 9 Cir., 80 F.2d 618, 620.

■■ We have already held that the Commissioner need not personally sign a waiver

but may delegate authority so to do. Onondaga Co. v. Commissioner, 2 Cir., 50 F. 2d 397, 399. See, also, United Thacker Coal Co. v. Commissioner, 1 Cir., 46 F.2d 231; Fleitmann v. Burnet, 62 App.D.C. 88, 65 F.2d 176. And the Board has found that the man who signed the Commissioner's name in this instance had been duly empowered to do that. The legal significance of this signature was, accordingly, the same as though the Commissioner had himself placed it there. That he didn't sign in triplicate is of no moment since the statute required nothing to be in triplicate.

This waiver, then, did become effective on the day before the two-year limitation upon assessment had run unless it was necessary to its effectiveness to have the notice to the taxpayer previously prepared and checked through the Bureau. This seems to have been done with great care and was not completed before the expiration of the two-year period but that can have no bearing upon the effective date of the waiver for in respect to that no notice to the taxpayer was necessary. Greylock Mills v. Commissioner, 2 Cir., 31 F.2d 655.

■ A comparatively minor point in issue is whether a conceded loss of $6,133.72 is deductible as an ordinary loss or only as a capital loss. See Sec. 101 of the Revenue Act of 1928, 26 U.S.C.A. § 101 note. The Board allowed it as a capital loss. The record deals with the facts in respect to it by way of stipulation which does not inform us as fully as might be wished. From the stipulation and from what is called Annex A which was attached to it, we are given to understand that the petitioner acquired securities of which he disposed in such a way as to sustain the loss conceded. Apparently this was by assignment to the Torvic Company, Inc., and seems to have been on Dec. 27, 1931, though we cannot be sure that it was not earlier or even later in that year. We do know that the conceded loss is $975.00 less than the aggregate amount the petitioner paid for the securities and that a note which the petitioner owed for that amount was later cancelled in part settlement of a suit which grew out of the transaction. At any rate it is evident that the petitioner received from his disposition of the securities at least the equivalent of $975.00. Annex A, above mentioned, shows that petitioner had bought and paid for most of the securities before 1929. There were three common shares and ten preferred shares of Fred F. French Operators, Inc., for which he subscribed and partially paid in July, 1929. The remainder of the purchase price was apparently paid in 1930 but in which month is not disclosed. And there was a Tudor City 12th Unit note for which he subscribed on Dec. 31, 1930 and paid $325 on Jan. 2, 1931.

On these facts we cannot hold that the Board was in error in allowing the deduction as a capital loss. As to the loss on securities surely held for more than two years the decision was certainly correct and in respect to the shares which may possibly have been held either more or less than two years, depending upon whether payment in full was a condition precedent to their acquisition, the ruling is equally immune from the attack now made upon it for error must be made to appear and the petitioner has failed to present a record which does that. As to the note which was acquired no earlier than the last day of December, 1930 there was, of course, no two-year period of holding but there was a lack of proof to show what part, if any, of the sustained loss was on this note. For all we can ascertain from this record, the petitioner may have disposed of this note for as much or for more than it cost him. The loss was sustained on various items lumped together and we have it only as the total amount.

Decision affirmed.