Roy I. MARTIN and Elizabeth E. Martin, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13759.

United States Court of Appeals Third Circuit.

Argued March 5, 1962.

Decided June 28, 1962.

Thomas S. Weary, Philadelphia, Pa. (Saul, Ewing, Remick & Saul, Philadelphia, Pa., on the brief), for petitioners.

Giora Ben-Horin, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Department of Justice, Washington, D. C., on the brief), for respondent.

Before STALEY, HASTIE and SMITH, Circuit Judges.

STALEY, Circuit Judge.

This appeal involves the taxability of money paid by a corporation to the widow of one of its officers. At his death, Arthur Purdy was president of A. R. Purdy Co., Inc. ("corporation"). Pursuant to a resolution passed by its board of directors, the corporation paid decedent's widow, petitioner,[1] $32,727.24 in 1955 and $27,272.76 in 1956. Petitioner failed to report these payments as income on her tax returns, causing the Commissioner to assess a deficiency against her on the basis that they were subject to treatment as ordinary income. The Tax Court upheld the Commissioner, concluding that petitioner failed to establish that the payments constituted a gift.[2]

On this appeal, petitioner contends that the Tax Court misinterpreted the Supreme Court's decision in Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), as announcing a new rule for determining when payments by a corporation to a widow constitute a gift, and that under the holdings in pre-Duberstein Tax Court decisions, the payments here clearly constituted a gift. The Commissioner's position, also based on Duberstein, is broken down into two parts. First, the controlling question is why the transfer was made, and that if made from "detached and disinterested generosity, * * * out of affection, respect, admiration, charity or like impulse," it is a gift, while if the payment is for past services, it receives income treatment. Next, the Tax Court's resolution of that question is a factual one that must be affirmed unless clearly erroneous.

This court recently had occasion in Smith v. Commissioner, 305 F.2d 778 (C.A.3, 1962), to review the decision in Commissioner v. Duberstein, supra, and United States v. Kaiser, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960). We said that, under those decisions, de-

1. The petitioner, Elizabeth E. Martin, was married to Roy I. Martin in 1955. The husband is a petitioner on this appeal because joint income tax returns were filed for the years in question. All future references will be to the wife-petitioner only.

2. 36 T.C. 556 (1961).

termination of whether a transfer constitutes a gift is a factual one that rests in the first instance with the trier of fact. That determination is to be made in light of all the relevant facts and circumstances and must be affirmed unless clearly erroneous.

We cannot say, from our review of the record, that the Tax Court's finding is clearly erroneous or charge it with relying on facts not relevant to the inquiry.

The corporation was closely held. Immediately prior to Arthur Purdy's death, its outstanding stock was held as follows:

| STOCKHOLDER | COMMON STOCK | PREFERRED STOCK |
|---|---|---|
| Trust under Will of Ethel B. Purdy (deceased's mother) | 588 | 588 |
| Deceased | 2,282½ | 2,282½ |
| Elizabeth Purdy Shaw (deceased's sister) | 1,825½ | 1,825½ |
| Ralph W. Shaw, Jr. (deceased's brother-in-law) | 304 | 304 |

Under Ethel B. Purdy's trust, upon deceased's death the trust was to terminate, whereupon one-half of the corpus was to pass to deceased's sister, and one-half was to be placed in trust for deceased's children, the trustee being Ralph W. Shaw, Jr., deceased's brother-in-law. The deceased placed his shares of stock in the corporation into two trusts, the trustees of which were the petitioner and a corporate trustee.

Within seven days after death ensued, decedent was succeeded as president by Ralph W. Shaw, Jr., his brother-in-law, and petitioner was elected to the board. Shortly thereafter, the board unanimously passed a resolution which in pertinent part read:

"Whereas, Arthur R. Purdy, President of this Company, died on November 3, 1954 and

"Whereas, he had been associated with the Company for more than 18 years and had rendered loyal and faithful service to the Company, and

"Whereas, the Directors believe that recognition of such service should be made and that his salary should be paid for a reasonable period of time to his widow * * *."
The Minutes of the meeting stated:

" * * * In view of Mr. Purdy's long and loyal service to the Company, the officers thought that his salary should be continued to be paid to his widow * * * for a reasonable period of time after his death in recognition of such service."

The resolution went on to provide that deceased's salary should be continued for a twenty-four month period and paid to petitioner in equal monthly installments. Two board members who supported the resolution testified before the Tax Court. One testified that the payments were "based upon the past services of Mr. Purdy." The other one, an assistant vice-president of a bank, said that he was a board member in order to help protect the bank's interests, and testified that he had met the petitioner only once and that he voted for the payments because "the services that the late Mr. Purdy had rendered to the company justified the payment on its part." He also testified that when considering the resolution, he possessed little knowledge about petitioner's financial position, although he was aware that the corporation had not been paying dividends. The corporation's year-end surplus for 1955 was $801,845.52, and $828,450.82 for 1956.

The monthly payments, equal to the amount paid decedent as a monthly salary at the time of his death, were

made on regular employees' payroll checks. They were deducted as business expenses by the corporation. The 1955 payments were included in the corporation's workmen's compensation policies, and subjected to withholding tax by the corporation which was reflected on a Withholding Tax Statement, commonly known as a "W–2", issued by it at the end of the year. The corporation did not withhold tax for 1956 after petitioner executed a hold harmless agreement on its behalf.

The clear force of these facts is that the payments were made by the corporation as additional compensation for the deceased's services. Petitioner cites many cases to us, but a situation of this kind involving, as it does, the resolution of a purely factual question makes precedent of little value.

The decision of the Tax Court will be affirmed.