HELEN RICH FINDLAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 80418, 87262.    Filed December 27, 1962.

---

*Lewis Stanton Bowdish, Esq.*, for the petitioner.

*Arthur S. O'Neill, Jr., Esq.*, and *John J. O'Toole, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in the petitioner's income tax for the years 1953 through 1956 as follows:

### Docket No. 87262

| Year | Deficiency |
|------|-----------|
| 1953 | $6,744.05 |
| 1954 | 6,590.52 |
| 1955 | 22,777.20 |

### Docket No. 80418

| Year | Deficiency |
|------|-----------|
| 1956 | $8,384.00 |

The issues in these consolidated cases are (1) whether the years 1953, 1954, and 1955 are barred by the statute of limitations; (2) whether a purported accord and satisfaction in 1957 prevents respondent from making further adjustments in petitioner's income taxes in the years 1953, 1954, and 1955; (3) whether certain amounts received by petitioner in the years 1953, 1954, and 1955 constitute income in respect of a decedent within the meaning of sections 126 of the Internal Revenue Code of 1939 and 691 of the Internal Revenue Code of 1954, or whether such payments are testamentary bequests excludable from income; (4) whether the payments thus received by petitioner in

1955 should include the amount of $30,184.95 in addition to the $19,815.05 reported by the petitioner; (5) whether the taxation of these payments in the years 1953, 1954, and 1955 as income in respect of a decedent would be unconstitutional; (6) whether petitioner was entitled to a deduction in excess of that allowed by respondent for the estate tax applicable to the payments received by petitioner in the years 1953, 1954, and 1955; and (7) whether the payment received by petitioner in 1956 from Willis, Faber & Dumas, Ltd., was a gift.

By an amendment to his answer in Docket No. 80418 respondent claims (as an alternative to issue No. 4 above) an increase in the deficiency for 1956 "to allow the inclusion in income the amount of $30,184.95, which is the amount withheld by the executor of the estate of J. Wilfred Findlay and utilized by petitioner" in an agreement executed by her in 1956.

### FINDINGS OF FACT.

Some of the facts were stipulated and they are herein included by this reference.

Helen Rich Findlay, hereinafter sometimes called the petitioner, is a resident of New York, N.Y. Petitioner filed her income tax returns for the years 1953 through 1956 with the district director of internal revenue, Manhattan District, New York, N.Y. During these years petitioner kept her books and prepared her returns on a cash basis.

Petitioner was 69 years old at the time of the trial. She married J. Wilfred Findlay in 1919 and remained married to him until 1948 when they were divorced. Findlay then married Lois Elliman. He died in 1951 and Lois subsequently married Irving S. Wright. For many years prior to his death in 1951, J. Wilfred Findlay solicited insurance business on behalf of Willis, Faber & Dumas, Ltd., insurance brokers and underwriters of London, England, for which he received commissions. He was also a member of a partnership in New York City that was engaged in the insurance business. On or about March 27, 1936, J. Wilfred Findlay and Willis, Faber & Dumas, Ltd., entered into a commission agreement which provided in part as follows:

(a) In the event of my death (J. W. F.) commission to be applied to all business transacted in the current year in which death occurred, and (b) for succeeding 5 years (c) thereafter commission to be 25% of existing commission, but limited to £1,500. (d) all payments to cease either on death of my wife (Mrs. F.) or 1955, whichever occurs first.

J. Wilfred Findlay died on May 31, 1951, a citizen of the United States and resident of New York, leaving a Last Will and Testament dated February 17, 1949, which was duly admitted to probate in the Surrogate's Court of the County and State of New York. The will provided, in part, as follows:

THIRD: All of the commissions and other payments payable to my Executor by WILLIS, FABER & DUMAS, LTD., of 54 Leadenhall Street, London, E.C. 3, England, pursuant to a memorandum dated the 27th day of March, 1936, and any subsequent memorandum or agreement hereinafter entered into regarding the payment of the same, I give, and bequeath as follows:

Fifty (50%) per cent thereof to my wife, LOIS ELLIMAN FINDLAY:

Fifty (50%) per cent thereof to my former wife, HELEN RICH FINDLAY.

\*       \*       \*       \*       \*       \*       \*

FOURTH: (a) All the rest, residue and remainder of my estate, real and personal, of whatsoever kind and wheresoever situate, of which I may die seized or possessed, and any property over which I shall have any power of disposition, I give, devise and bequeath to my wife, LOIS ELLIMAN FINDLAY.

An agreement dated May 6, 1952, was executed by petitioner, Lois E. Findlay, and the Schroder Trust Co. (a New York corporation), as executor of the will of J. Wilfred Findlay, under which the Schroder Trust Co. purported to assign the testator's rights to commissions payable by Willis, Faber & Dumas, Ltd., to petitioner and Lois E. Findlay. The agreement provides, in part, as follows:

WHEREAS the said Testator under Article THIRD of said Last Will and Testament did bequeath all of the commissions and other payments payable to his executor, pursuant to a certain contract between himself and Willis, Faber & Dumas, Ltd. of No. 54 Leadenhall Street, London, E.C. 3, England unto the parties of the first part, share and share alike, a copy of which agreement is annexed hereto and made a part hereof; and

WHEREAS the parties are agreed that said bequest constitutes a specific legacy of the testator's rights under said contract and of the benefits therein provided, and the said party of the second part [Schroder Trust Co.] is therefore willing to assign unto the parties of the first part [Lois Elliman Findlay and Helen Rich Findlay], and the parties of the first part are willing to receive an assignment of the testator's rights under said agreement in satisfaction of said bequest; \* \* \*

On May 29, 1952, a contract was executed by petitioner, Lois Elliman Findlay, the Schroder Trust Co., the Standyards Agency, Ltd. (London, England), the General Assets & Agency Co., Ltd. (London, England), and Willis, Faber & Dumas, Ltd., under which the petitioner and Lois Elliman Findlay agreed to accept $150,000 each in settlement of the obligations of Willis, Faber & Dumas, Ltd., under the agreement of March 27, 1936. Payment to each was to be made in two equal installments, one in 1952 and one in 1953 (but not later than May 31, 1953). The contract of May 29, 1952, recited that in view of certain ambiguities in the construction of the March 27, 1936, agreement and in view of uncertainties as to the future of said agreement, the parties of the May 29, 1952, contract "agreed upon the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000) as the fair amount for which they are willing to settle and liquidate said indeterminate contract."

A supplemental agreement dated November 11, 1953, was executed by the same parties to modify the details of payment of the May 29, 1952, contract so that the sums payable would be as follows:

(a) $50,000 each to Lois Elliman Wright and Helen Rich Findlay upon the execution and delivery of these presents;

(b) $25,000 each to Lois Elliman Wright and Helen Rich Findlay on January 10, 1954;

(c) $25,000 each to Lois Elliman Wright and Helen Rich Findlay on December 10, 1954; and

(d) $50,000 each to Lois Elliman Wright and Helen Rich Findlay on January 10, 1955;

*Provided, however,* That no payments need be made under clauses (c) and (d) above unless and until evidence satisfactory to [Willis, Faber & Dumas, Ltd.] has been furnished to it by Schroder Executor & Trustee Company, Ltd., as Ancillary Administrator with the Will Annexed of the Estate of J. Wilfred Findlay, that all British death duty on said Estate has been paid in full; and provided further that in case, prior to December 10, 1954, said Ancillary Administrator shall certify to [Willis, Faber & Dumas, Ltd.] that British estate assets available to the Ancillary Administrator * * * are insufficient to pay all British death duty on said estate, together with the amount required to pay any deficiency therein, then and in such event [Willis, Faber & Dumas, Ltd.] shall forthwith pay to said Ancillary Administrator the amount so required to pay such deficiency (but not in excess of $150,000), and thereupon the obligations of [Willis, Faber & Dumas, Ltd.] to make payments under clauses (c) and (d) above to Lois Elliman Wright and Helen Rich Findlay shall be reduced by the amount so paid to the Ancillary Administrator. * * *

Petitioner received payments from Willis, Faber & Dumas, Ltd., of $50,000 in each of the years 1953 and 1954 and $19,815.05 in 1955 pursuant to the agreements dated May 29, 1952, and November 11, 1953.

The commuted value of the commissions payable by Willis, Faber & Dumas, Ltd., under the agreement of March 27, 1936, in the amount of $268,091.30, was included in the estate of J. Wilfred Findlay.

Pertinent figures on the final audit of the estate tax return on the Estate of J. Wilfred Findlay were as follows:

| | |
|---|---:|
| Total gross estate | $1,278,208.46 |
| Funeral and administrative expenses | 126,212.39 |
| Adjusted gross estate | 1,151,996.07 |
| Value of Willis, Faber & Dumas, Ltd., claim | 268,091.31 |
| Maximum marital deduction | 575,998.03 |
| Total amount of bequests to surviving spouse | 635,661.41 |
| Total gross taxes (basic and additional) | 156,909.39 |
| Credit: Federal gift taxes | 8,324.50 |
| Credit: British estate duty | 26,011.44 |
| Credit: Canadian succession duty | 205.11 |
| Federal estate taxes payable | 108,445.96 |

A certification of United Kingdom Estate Duty dated June 3, 1954, was submitted to the district director of internal revenue, Manhattan District, New York, N.Y., on August 9, 1954, by the Schroder Trust Co. as executor of the estate of J. Wilfred Findlay, certifying to the

payment in full of £40,779. 5s. 7d. ($114,181.98) in estate duty to Great Britain. The certificate indicates that the rate of tax on the described assets (which included the right to commissions under the March 27, 1936, agreement) was 45 percent; and it is stipulated that 45 percent of the value of the right to the commissions, as listed on the certificate, would be $92,429.76.[1]

On August 24, 1956, petitioner, Lois E. Wright, Schroder Trust Co., as executor of the will of J. W. Findlay, and Richard Remsen and Schroder Trust Co., as trustees under an indenture of trust dated January 6, 1948, entered into an agreement for the apportionment of estate taxes. The agreement stated that whereas (1) the petitioner had, by letter agreement dated September 26, 1951, deposited with the Schroder Trust Co. $101,000 in cash and bonds as a deposit against the liability for estate taxes; (2) J. Wilfred Findlay had established a trust (as part of a separation agreement in 1948) with income to himself for life and upon his death the trust fund to be divided into two equal parts, one equal part to be retained in trust with income to petitioner for life and remainder to the settlor's estate, the other equal part to be paid over to petitioner absolutely, less such portion thereof as might be equivalent to the proportioned part of estate and inheritance taxes attributable to the part so payable to petitioner; (3) the trustees of said trust, in paying over one equal part of the trust fund to petitioner, absolutely, withheld the sum of $43,642.42 until the estate, inheritance, and succession taxes attributable to petitioner could be ascertained; (4) the British death duty, the Federal estate tax, and other taxes had been paid or ascertained; and (5) there was disagreement among the parties with respect to the apportionment of such death duty and taxes, it was agreed as follows:

FIRST: Upon the execution of this Agreement, Helen Rich Findlay has paid to the Executor the sum of $54,055.27 as the full net amount apportionable against her individually (after credit for amounts withheld to pay British estate duty out of moneys due Helen Rich Findlay from Willis, Faber & Dumas, Ltd.) with respect to British death duty and Federal and New York estate taxes, on the bequest to her under the will and also the one equal part of the trust fund payable to her absolutely. Accordingly, Schroder Trust Company has released and delivered to Helen Rich Findlay all assets held by it under said letter agreement dated September 26, 1951, and the Trustees have released and delivered to her from trust principal the assets listed in Annex A hereto, being the share of the trust fund now represented by the funds heretofore withheld from her by the Trustees and invested as a part of the trust fund, such share being computed as set forth in Annex A.

On or about September 6, 1956, petitioner received $16,425 from Willis, Faber & Dumas, Ltd., together with a letter to her dated August 23, 1956, signed by a director, which stated, in part, as follows:

---

[1] This amount should be $92,471.03 ($205,491.17 × 0.45).

our legal obligations under [the March 27, 1936] agreement were fully discharged by the settlement made in 1951 and the only question which could remain was whether there might still be some moral obligation to you, having regard to the way things had worked out since that time.

My Board have again had the figures under review and, having in mind the fact that the income accruing to this Company out of the American business introduced by the late J. W. Findlay had been so satisfactory and had so far exceeded our expectations, they feel morally bound to make some provision for Mrs. Lois Wright and yourself.

The payment of $16,425 to petitioner was made pursuant to a resolution of the board of directors of Willis, Faber & Dumas, Ltd., which was passed on August 7, 1956, and which stated, in part, as follows:

### J. W. FINDLAY, DECEASED—PROVISION FOR DEPENDANTS

Arising out of his visit to New York, it was reported by Mr. G. B. Wilson that he had seen the solicitors representing Mrs. Helen Findlay and Mrs. Lois Wright (formerly Findlay) and had undertaken to bring before the Board the question of making some provision for them in the future.

He reminded the Board that in 1951 a settlement had been made with the Findlay estate which took into account the fact that further payments would almost certainly have to be made to Findlay's dependants. This was considered to be necessary both in relation to the continuance of the business connections developed by the late J. W. Findlay and the preservation of the Company's reputation in the U.S.A. and the view then taken now appears to be confirmed. Accordingly it was

Resolved

that subject to any further resolutions of the Board on the matter, there be paid annually to Mrs. Helen Findlay $16,425 and annually to Mrs. Lois Wright $13,500.

The members of the board of directors of Willis, Faber & Dumas, Ltd., comprised all of the ordinary shareholders of the firm. The firm had an established policy of making provision for the widows of deceased officers and employees.

Petitioner and J. Wilfred Findlay were for many years close personal friends of several of the principal men in Willis, Faber & Dumas, Ltd., including Felix Douglas-Whyte (senior life director), and his wife; David Willis (director), and his wife; and Leonard Southall (chief underwriter), and his wife.

Petitioner noted the receipt of the $16,425 on her income tax return for 1956 but claimed that it was a nontaxable gift. Willis, Faber & Dumas, Ltd., was allowed a deduction for this payment for British tax purposes.

Prior to the expiration of the statute of limitations petitioner signed consent forms (Form 872) extending the time for assessment of taxes for the years 1953, 1954, and 1955 to June 30, 1960. Respondent also signed these consent forms prior to the expiration of the period of limitations for the 3 years. Respondent mailed the statutory notice of deficiency for these 3 years to petitioner on March 25, 1960. Re-

spondent did not return signed copies of Form 872 to petitioner or her representative until June 1, 1960.

Petitioner included in income the payments received from Willis, Faber & Dumas, Ltd., of $50,000 in each of the years 1953 and 1954 and $19,815.05 in 1955.

Petitioner claimed deductions in the years 1953, 1954, and 1955 in the respective amounts of $13,011.67, $13,011.67, and $5,156.53, which were described as the Federal estate tax attributable to the payments received from Willis, Faber & Dumas, Ltd., in the respective years. Claims for refund dated April 11, 1958, were filed on May 27, 1959, claiming the said $50,000 reported in 1953 and 1954 and $19,815.05 in 1955 were not taxable income.

Respondent in his statutory notice of deficiency stated that the "issue raised in each of your claims for refund, requesting the elimination from your 1953, 1954, and 1955 tax returns of reported net income which you received under the will of J. Wilfred Findlay, has been given careful consideration and it has been determined that the elimination is not allowable." Respondent also disallowed a portion of the deductions claimed by petitioner in the years 1953, 1954, and 1955 (for Federal estate taxes attributable to the payments from Willis, Faber & Dumas, Ltd.) in the respective amounts of $8,447.61, $8,447.61, and $592.47. Respondent also stated that in the event the receipts from Willis, Faber & Dumas, Ltd., are not taxable income, the deduction for estate taxes would not be allowable. For the year 1955 respondent included an additional $30,184.95 in petitioner's income for that year with the explanation that "This sum is deemed to have been received by you from Willis, Faber and Dumas, Ltd. and is taxable to you within the provisions of Section 61(a) and/or Section 691(a) of the 1954 Code."

For the year 1956 respondent determined that the amount of $16,425 received by petitioner from Willis, Faber & Dumas, Ltd., in that year was taxable income.

OPINION.

The first issue is whether the years 1953, 1954, and 1955 are barred by the statute of limitations. The record shows that petitioner signed consents for each of the 3 years extending the period of assessment of tax for these years to June 30, 1960, and respondent also signed them. Both parties signed the consent form prior to the expiration of the statute of limitations on the 3 years. Petitioner does not dispute these facts, but argues that the consents were ineffective because respondent failed to *return* the signed consent forms to petitioner prior to the expiration of the statute of limitations.

Section 6501(c)(4) of the Internal Revenue Code of 1954 provides that "Where, before the expiration of the time prescribed in this

section for the assessment of any tax imposed by this title * * * both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." [2]

There is no requirement in the statute that the consent must be signed by respondent and *returned* to the taxpayer prior to the expiration of the limitations period. In *Stern Brothers & Co.*, 17 B.T.A. 848, affd. 51 F. 2d 1042 (C.A. 8), where the validity of consent extending the limitations period was in issue, the Board said:

Notice by the Commissioner of his acceptance of consents is not necessary to their validity. *Greylock Mills*, 9 B.T.A. 1281; affd., 31 Fed. (2d) 655. The statute provides that if the taxpayer and the Commissioner consent in writing the tax may be assessed within the period agreed upon. The consents were sent to the petitioner by the Commissioner with a request that they be executed; they were signed and were returned to the Commissioner and were then signed by him. They were then valid consents under the statute. * * *

To the same effect, *House* v. *Commissioner*, 97 F. 2d 516 (C.A. 2).[3] We sustain respondent on this issue.

The next issue is whether respondent is precluded from determining deficiencies for the years 1953, 1954, and 1955 because of a purported "accord and satisfaction" covering these years which is binding on the parties. After administrative review of petitioner's returns by respondent it was determined early in 1957 that there were overassessments in petitioner's income taxes for 1953, 1954, and 1955 in the respective amounts of $184.96, $180.16, and $55.38. Petitioner agreed to the overassessments in these amounts [4] and respondent paid these amounts to petitioner in 1957.

Petitioner argues that when she formally accepted the respondent's adjustments resulting in small overassessments for these 3 years by signing the waiver of restrictions on assessment and agreement to assessment, there arose a "completed accord and satisfaction over the dispute." In *Auerbach Shoe Co.*, 21 T.C. 191, affd. 216 F. 2d 693, the taxpayer made a similar argument that its execution of a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" for two of its tax years amounted to an account stated between the parties which precluded respondent

---

[2] Sec. 6501(c)(4) of the Internal Revenue Code of 1954 is substantially the same as sec. 276(b) of the Internal Revenue Code of 1939.

[3] In the *Stern Brothers* case the waiver statute involved was sec. 250(d) of the 1921 Revenue Act, while in the *House* case, sec. 276(b) of the 1928 Revenue Act was involved. The relevant language in these sections is similar to the language in sec. 276(b) of the Internal Revenue Code of 1939 and sec. 6501(c)(4) of the Internal Revenue Code of 1954.

[4] The record shows that petitioner in 1957 signed a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" (pursuant to sec. 6213(d) of the Internal Revenue Code of 1954) showing overassessments of $184.96, $180.16, and $55.38 for 1953, 1954, and 1955.

from asserting any further liability for those years. We rejected this argument stating that "In order to bind the Government and to preclude it from asserting a further liability it is necessary for the petitioner here to show that it entered into a compromise or closing agreement with the respondent in the manner provided by the [1939] Internal Revenue Code (secs. 3760 and 3761). *Joyce* v. *Gentsch*, 141 F. 2d 891 (C.A. 6, 1944). See *Payson* v. *Commissioner*, 166 F. 2d 1008 (C.A. 2, 1948), and *Bank of New York* v. *United States*, 170 F. 2d 20 (C.A. 3, 1948)." [5] We sustain the respondent on this issue.

The next issue is whether the payments received by petitioner from Willis, Faber & Dumas, Ltd., the insurance brokers and underwriters in London, England, in 1953, 1954, and 1955 in the respective amounts of $50,000, $50,000, and $19,815.05 are taxable to her under sections 126 of the Internal Revenue Code of 1939 and 691 of the Internal Revenue Code of 1954 [6] as income in respect of a decedent. Petitioner contends they are excludable testamentary bequests.

[5] Secs. 3760 and 3761 of the Internal Revenue Code of 1939 are substantially similar, respectively, to sec. 7121 of the Internal Revenue Code of 1954 (which makes specific provisions for closing agreements) and sec. 7122 of the Internal Revenue Code of 1954 (which grants the Secretary or his delegate authority to execute compromises).

[6] The two sections are substantially the same. Sec. 691 of the Internal Revenue Code of 1954 provides, in part, as follows:

SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequests, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

(2) INCOME IN CASE OF SALE, ETC.—If a right, described in paragraph (1), to receive an amount is transferred by the estate of the decedent or a person who received such right by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent, there shall be included in the gross income of the estate or such person, as the case may be, for the taxable period in which the transfer occurs, the fair market value of such right at the time of such transfer plus the amount by which any consideration for the transfer exceeds such fair market value. For purposes of this paragraph, the term "transfer" includes sale, exchange, or other disposition, or the satisfaction of an installment obligation at other than face value, but does not include transmission at death to the estate of the decedent or a transfer to a person pursuant to the right of such person to receive such amount by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent.

(3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

Section 691 of the Internal Revenue Code of 1954 provides that the "amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of: (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right."

Petitioner attacks the constitutionality of these sections, stating that the "taxation of bequests as 'income in respect of decedents' by Sections 126(a) of the 1939 Code and 691(a)(1) of the 1954 Code is in this case a tax on principal of the decedent's estate" and "As such it is a direct tax not apportioned as required by Article I, Section 2, Clause 3, and Article I, Section 9, Clause 4 of the Constitution." It has been held that section 126(a) of the Internal Revenue Code of 1939 imposes a tax on income rather than on principal, and is therefore within the scope of the 16th amendment. *Estate of Fred Basch*, 9 T.C. 627; *Richardson, Jr.* v. *United States*, 294 F. 2d 593.

In 1936 J. Wilfred Findlay, who for years had solicited insurance on a commission basis for Willis, Faber & Dumas, Ltd., entered into a commission agreement with them which set out the terms and duration of payment after his death of commissions from his business. These payments were to cease "either on death of my wife (Mrs. F.) or 1955, whichever occurs first." Petitioner and J. Wilfred Findlay were divorced in 1948 and Findlay subsequently married Lois Elliman. J. Wilfred Findlay died in 1951 and in his will bequeathed 50 percent of the commissions payable under the 1936 agreement to his wife Lois and 50 percent to his former wife, petitioner. In 1952 petitioner and Lois Elliman Findlay agreed to accept $150,000 each in settlement of the obligations of Willis, Faber & Dumas, Ltd., under the 1936 agreement.

It is immaterial that the petitioner received the payment of these commissions under the settlement agreement. Petitioner's claim was essentially derived from the 1936 commission agreement executed by the decedent (and, of course, from the will) and the taxable nature of any amount recovered by petitioner in settlement of her claim depends upon the nature of the claim. *Chalmers Cullins*, 24 T.C. 322.

We believe it is quite evident that the payments thus received by petitioner in 1953, 1954, and 1955 were "income in respect of a dece-

dent" within the meaning of the pertinent statutory sections. Section 126 of the Internal Revenue Code of 1939 was enacted in 1942 primarily to prevent the "bunching" of income in a decedent's last taxable period by including in income amounts which ordinarily would be receivable over a period of several years. S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 504, 580.[7] The commissions here involved were not payable until after Findlay's death and therefore were not properly includable in his income for his last taxable period. It is uncontrovertible that similar commissions received by Findlay during his life from his insurance business were taxable as ordinary income. Consequently, commissions paid to petitioner after decedent's death retained their nature as ordinary income. See S. Rept. No. 1631, *supra*, 1942–2 C.B. 580.

In *Frances E. Latendresse*, 26 T.C. 318, affd. 243 F. 2d 577, this Court held that renewal commissions paid to a widow on insurance policies sold by her husband prior to his death and similar commissions acquired by the husband were taxable to the widow as ordinary income under section 126 of the Internal Revenue Code of 1939. This Court stated that the renewal commissions on the policies written by decedent would clearly have been taxable to him as ordinary income had he lived, and accordingly, those commissions would be taxable to the widow as ordinary income under section 126. As to the contingent renewal commissions purchased by decedent from another agent, the Court again stated that "Such renewal commissions, being contingent upon payment at a future date by the insured persons, were not payable and were not properly includible in respect of the taxable period in which fell the date of decedent's death or a prior period. Accordingly, they constitute ordinary income taxable to Frances in the year of receipt, under section 126 (a) of the Internal Revenue Code of 1939." We think the *Latendresse* case is applicable to the case before us in that both involve commissions which would be ordinary income if received in decedent's lifetime, and were not due or payable until after decedent's death. See also *United States v. Ellis*, 264 F. 2d 325.

Petitioner argues that the agreements executed on May 6, 1952, May 29, 1952, and the supplemental agreement of November 11, 1953, constituted a transfer of the claim to the commission income by the estate to the petitioner and Lois within the meaning of section 126 (a) (2) of the Internal Revenue Code of 1939. Section 126 (a) (2),

---

[7] The Senate Finance Committee report goes on to state that sec. 126 "changes the existing law by providing that such amounts shall not be included in the decedent's income but shall be treated, in the hands of the persons receiving them, as income of the same nature and to the same extent as such amounts would be income if the decedent remained alive and received such amounts. Section 22(b)(3) (excluding from income amounts received by bequest, devise, or inheritance) does not apply to these amounts which are specifically required to be included in income."

which is substantially the same as section 691(a)(2) of the Internal Revenue Code of 1954, provides as follows:

SEC. 126. INCOME IN RESPECT OF DECEDENTS.
   (a) INCLUSION IN GROSS INCOME.—

   *       *       *       *       *       *       *

   (2) INCOME IN CASE OF SALE, ETC.—If a right, described in paragraph (1), to receive an amount is transferred by the estate of the decedent or a person who receives such right by reason of the death of the decedent or by bequest, devise or inheritance from the decedent, there shall be included in the gross income of the estate or such person, as the case may be, for the taxable period in which the transfer occurs, the fair market value of such right at the time of such transfer plus the amount by which any consideration for the transfer exceeds such fair market value. For the purposes of this paragraph, the term "transfer" includes sale, exchange, or other disposition, but does not include a transfer to a person pursuant to the right of such person to receive such amount by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent.

We cannot accept petitioner's argument since the statutory language is clear that the term "transfer * * * does not include a transfer to a person pursuant to the right of such person to receive such amount by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent." [8] The record shows clearly that petitioner received her claim to the commission income under article THIRD of decedent's will.

In fact, the agreement of May 6, 1952, which is the very agreement which petitioner depends upon to show a "transfer" of this income right from the estate to petitioner within the meaning of section 126(a)(2) of the Internal Revenue Code of 1939, states that the "parties [petitioner, Lois, and the executor] are agreed that said bequest constitutes a specific legacy of the testator's rights under said contract and of the benefits therein provided." Whatever the purpose might have been for executing the May 6, 1952, agreement, it is clear that it did not "transfer" the claim here involved from the estate to the petitioner within the meaning of the statute.

---

[8] The Senate Finance Committee in its report (S. Rept. No. 1631, 77th Cong., 2d Sess.) on the Revenue bill of 1942 states as follows:

"Section 126(a)(2) of the Code, as added by subsection (e), provides that if the right to receive an amount described in section 126(a)(1) is transferred by a person described in such subsection, the fair market value of such right at the date of the transfer shall be included in the income of such person, plus the amount by which any consideration received on such transfer exceeds the fair market value of such right. Thus, if the right to receive the income is disposed of, as by gift, the donor must include the fair market value of such right in his gross income, in view of his benefit from such right. However, if the person to whom such right is transferred is a person described in section 126(a)(1) as being entitled to such right by reason of the death of the decedent (for example, the beneficiary of the trust of such right), or by bequest, inheritance, or devise from the decedent (for example, a specific legatee of such right or the residuary legatee of the estate), the fair market value of the right is not included in the income of the transferor, but the transferee must include the amount received in his income under the provisions of section 126(a)(1), or if he transfers such right to a person not described in section 126(a)(1), then he must include the fair market value of this right in his income."

We hold that the payments received by petitioner from Willis, Faber & Dumas, Ltd., in 1953, 1954, and 1955 in the respective amounts of $50,000, $50,000, and $19,815.05 are taxable as ordinary income under sections 126 of the Internal Revenue Code of 1939 and 691 of the Internal Revenue Code of 1954.

The next issue is whether the petitioner (a cash basis taxpayer) should include in her income for 1955, in addition to the amount of $19,815.05 actually received by her in that year, the amount of $30,184.95 which represents the British estate duty attributable to her share of the commission payments from Willis, Faber & Dumas, Ltd. Respondent's position is that under the May 29, 1952, agreement the petitioner had a right to $150,000 payable in future installments, and that by a later agreement (November 11, 1953) she agreed to a reduction of this amount to the extent that it would be necessary to pay the British estate duty. Therefore, as respondent states on brief, "it was as if * * * [petitioner] actually received the $50,000 in 1955 and then paid $30,184.95 to the British Government."

Under the May 29, 1952, agreement the petitioner agreed to accept $150,000 in full and final settlement of the obligation of Willis, Faber & Dumas, Ltd., to make the commission payments under the 1936 contract with decedent. The November 11, 1953, supplemental contract merely modified the details of payment of the May 29, 1952, contract, and petitioner also agreed that if British assets were insufficient to pay all British death duty on decedent's estate, then Willis, Faber & Dumas, Ltd., should pay to the ancillary administrator the amount so required to pay such deficiency, and the last two scheduled payments to petitioner (totaling $75,000) would be reduced by that amount. As it developed, petitioner received $19,815.05 in 1955 and the balance of her $50,000 payment under the November 11, 1953, agreement was paid by Willis, Faber & Dumas, Ltd., toward the British estate duty.

It is clear that, under these facts, petitioner constructively received the $30,184.95 in 1955. Petitioner used this amount to meet her obligation under the November 11, 1953, agreement to pay a portion of the British estate duty. From an income tax standpoint, the transaction is the same as if the entire $50,000 were paid to petitioner in 1955 and she, in turn, reimbursed the ancillary administrator for her agreed share of the British estate duty. Elimination of this extra step by the parties does not change the tax consequences. Petitioner can prevail only if there be some provision of law entitling her to deduct the withheld portion that was used to pay the British estate duty.

Section 164(b) of the Internal Revenue Code of 1954 unequivocally provides that "No deduction shall be allowed for the following taxes: * * * (4) Estate, inheritance, legacy, succession, and gift

taxes." The broad sweep of the statutory language of section 164(b) necessarily encompasses foreign estate duties, and petitioner makes no argument to the contrary. There is no section that can be construed as authorizing any deduction for any estate tax except sections 691(c) (1) (A) and (B) of the Internal Revenue Code of 1954. See *Helen C. Rippey*, 25 T.C. 916, and cases cited. Sections 691(c)(1) (A) and (B) of the Internal Revenue Code of 1954 carve out an exception to the above statutory rule of section 164(b) of the Internal Revenue Code of 1954 in that they allow a deduction for a ratable portion of the Federal estate tax [9] where a taxpayer includes in gross income any items which are taxable as "income in respect of a decedent." There is no similar provision for the deduction by such taxpayer of foreign estate duties, and consequently such a deduction is unallowable.

We hold that the amount of $50,000 is includable in petitioner's income in 1955 as income in respect of a decedent.

The next issue is whether petitioner is entitled to deduct all of the estate tax attributable to the Willis, Faber & Dumas, Ltd., claim which was included in the decedent's estate at a value of $268,091.31. Commissions to be paid under this claim were bequeathed one-half to petitioner and one-half to Lois Elliman Wright (decedent's widow), and the payments were made in equal amounts to them in 1953, 1954, and 1955. Respondent allowed petitioner a deduction for one-half of the estate tax attributable to the claim and allowed the other one-half as a deduction to the widow. In support of her position petitioner contends that the value of Lois Elliman Wright's payments was included in the marital deduction and was, therefore, "completely free of federal estate tax," and hence all the estate tax on this claim was really attributable to petitioner.[10]

Section 691(c)(1)(A) of the Internal Revenue Code of 1954 (which is substantially similar to section 126(c)(1) of the Internal Revenue Code of 1939) provides that a "person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect

[9] Sec. 691(c)(2)(A) of the Internal Revenue Code of 1954 provides that for the purposes of subsecs. 691(c)(1), (A) and (B) of the Internal Revenue Code of 1954 "The term 'estate tax' means the tax imposed on the estate of the decedent or any prior decedent under section 2001 or 2101, reduced by the credits against such tax."

[10] It is stipulated that the total amount of bequests to Lois Elliman Wright, the surviving spouse, was $635,661.41 and the maximum marital deduction was $575,998.03. Respondent indicates on brief that the maximum marital deduction was later adjusted to $592,026.83. Even with this adjusted amount, it is apparent that the marital deduction did not include all of the bequests to the surviving spouse.

of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1)."

The statutory language is clear. It makes no provision for reducing the "value for estate tax purposes" by any portion of the value of items of income in respect of a decedent which are included in the marital deduction. It is significant that an effort to amend section 691(d) of the Internal Revenue Code of 1954 to bring about the very result which petitioner here seeks was not successful.[11] We hold for respondent on this issue.

The last issue is whether the amount of $16,425 received by petitioner in 1956 from Willis, Faber & Dumas, Ltd., is a nontaxable gift within the meaning of section 102(a) of the Internal Revenue Code of 1954. In *Commissioner* v. *Duberstein*, 363 U.S. 278, the Supreme Court stated that in deciding whether a transfer constitutes a gift, the question is essentially one of fact, where we must seek "the dominant reason that explains [the payor's] action." If the dominant motive for the transfer springs from "affection, respect, admiration, charity or like impulses," *Commissioner* v. *Duberstein, supra*, then the transfer is a gift. But if the payment proceeds "primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of any economic nature, * * * it is not a gift. And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it'." *Commissioner* v. *Duberstein, supra*.

The resolution adopted by the board of directors of Willis, Faber & Dumas, Ltd., to provide for the annual payments to petitioner is certainly inconsistent with any intent to make a gift. It states that "in 1951 a settlement had been made with the Findlay estate which took into account the fact that further payments would almost certainly have to be made to Findlay's dependants" and that "This was

---

[11] Sec. 19 of H.R. 3041, 86th Cong., 1st Sess. (Jan. 21, 1959). The report of the advisory group on subchapter J of the Internal Revenue Code of 1954 submitted to the Ways and Means Committee in December 1958 stated in part as follows:

"Section 691(d)(1)(A) taken in conjunction with section 691(d)(2)(B) amends section 691(c)(1)(A) of present law to prevent the allowance of any income tax deduction for estate tax to a person who receives income in respect of a decedent which did not bear estate tax because it gave rise to a marital or charitable deduction. For example, assume a decedent died intestate and his widow and son each receive one-half of his residuary estate. Although the one-half of the income in respect of a decedent which the wife receives qualifies for the marital deduction and therefore does not give rise to any estate tax, present law would treat a portion of the deduction for estate tax attributable to income in respect of a decedent as allowable to the wife. Under the proposed statute no part of the deduction for estate tax paid on income in respect of the decedent would be allowed to the wife. The full deduction would be allowed to the son, whose share of the estate in fact bore the burden of the only estate tax imposed on the income in respect of the decedent."

considered to be necessary both in relation to the continuance of the business connections developed by the late J. W. Findlay and the preservation of the Company's reputation in the U.S.A. and the view then taken now appears to be confirmed." There is a strong suggestion here that the annual payments to petitioner starting in 1956 were regarded, in part at least, as a continuation of the payments made to her in the years 1953, 1954, and 1955. The resolution of the directors not only takes cognizance of the extremely satisfactory services rendered by the decedent but also shows concern for the economic benefits to be gained from the preservation of the company's reputation in this country. It can hardly be argued that the payments sprang from a "detached and disinterested generosity." *Commissioner* v. *Duberstein, supra.*

In addition, the letter to petitioner accompanying the first payment in 1956 states that the "Board have again had the figures under review and, having in mind the fact that the income accruing to this Company out of the American business introduced by the late J. W. Findlay had been so satisfactory and had so far exceeded our expectations, they feel morally bound to make some provision for Mrs. Lois Wright and yourself."

It is also significant that the payment to petitioner was deducted by Willis, Faber & Dumas, Ltd., for British tax purposes. As we said in *Alex Silverman,* 28 T.C. 1061, 1066, affd. 253 F. 2d 849, "The corporation's treatment of the disbursement as an expense on its books and tax return is evidence that the corporation did not regard it as a gift." There is no showing that the petitioner was in any financial need which the payments would alleviate. See *Roy I. Martin,* 36 T.C. 556, affd. 305 F. 2d 290. Finally, it appears that the amount of the annual payment was determined by computing the actuarial percentage obtainable (based on petitioner's age) if the amount of decedent's earnings during the last year of his life had been used to buy an annuity for her. These annual payments, as far as this record shows, were to continue indefinitely and under the circumstances they cannot be regarded as gifts.

We hold that the payment to petitioner by Willis, Faber & Dumas, Ltd., in 1956 was not a gift within the meaning of section 102 of the Internal Revenue Code of 1954. No contention is made by petitioner that she would be entitled to any death benefit exclusion under section 101(b)(1), I.R.C. 1954.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

FORRESTER, *J.,* concurs in the result.