IRVING S. WRIGHT AND LOIS E. WRIGHT, PETITIONERS, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83276, 84068, 86440.   Filed December 27, 1962.

*Jerome Landau, Esq.*, for the petitioners.
*Arthur S. O'Neill, Jr., Esq.*, and *John J. O'Toole, Esq.*, for the
respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in the
petitioners' income tax as follows:

### Docket No. 84068

| Year | Deficiency |
| --- | --- |
| 1953 | $32,188.68 |
| 1954 | 29,736.36 |
| 1955 | 33,321.50 |

### Docket No. 83276

| Year | Deficiency |
| --- | --- |
| 1956 | $9,267.18 |

### Docket No. 86440

| Year | Deficiency |
| --- | --- |
| 1957 | $10,387.50 |
| 1958 | 10,927.23 |

Petitioners claim an overpayment of income tax in the year 1953 in
the amount of $3,530.50.   The issues in these consolidated cases are
(1) whether certain payments received by petitioners in 1953, 1954,
and 1955 constitute income in respect of a decedent within the mean-

ing of section 126 of the Internal Revenue Code of 1939 and section 691 of the Internal Revenue Code of 1954, or whether such payments are testamentary bequests excludable from income; (2) whether the taxation of these payments in the years 1953, 1954, and 1955 would be unconstitutional; (3) whether the amount to be included in income in 1955 is $19,815.05 (the amount actually received) or a greater amount; (4) whether the amount of $13,500 received by petitioners in each of the years 1956, 1957, and 1958 are nontaxable gifts; and (5) whether section 101(b) of the Internal Revenue Code of 1954, which allows a death benefit exclusion of $5,000, is applicable here.

FINDINGS OF FACT.

Some of the facts are stipulated and they are herein included by this reference.

Irving S. and Lois E. Wright, husband and wife, are residents of New York, N.Y. They filed joint income tax returns for the years 1953 through 1958 with the district director of internal revenue, Manhattan, New York, N.Y. Lois E. Wright will hereinafter be called the petitioner.

Petitioner married J. Wilfred Findlay in 1948, who had previously been married to Helen Rich Findlay from 1919 until their divorce in 1948. Findlay died in 1951 and thereafter petitioner married Irving S. Wright.

For many years prior to his death, J. Wilfred Findlay solicited insurance business as an employee on behalf of Willis, Faber & Dumas, Ltd., insurance brokers and underwriters of London, England, for which he received commissions. On or about March 27, 1936, J. Wilfred Findlay and Willis, Faber & Dumas, Ltd., entered into a commission agreement which provided, in part, that "(a) in the event of my death (J. W. F.) commission to be applied to all business transacted in the current year in which death occurred, and (b) for succeeding 5 years (c) thereafter commission to be 25 percent of existing commission, but limited to £1,500. (d) all payments to cease either on death of my wife (Mrs. F.) or 1955, whichever occurs first * * *."

J. Wilfred Findlay died on May 31, 1951, leaving a Last Will and Testament dated February 17, 1949, which was admitted to probate in the Surrogate's Court of the County and State of New York. Paragraph THIRD of the will provides, in part, as follows:

THIRD: All of the commissions and other payments payable to my Executor by WILLIS, FABER & DUMAS, LTD., of 54 Leadenhall Street, London, E.C. 3, England, pursuant to a memorandum dated the 27th day of March, 1936, and any subsequent memorandum or agreement hereinafter entered into regarding the payment of the same, I give, and bequeath as follows:

Fifty (50%) per cent thereof to my wife, LOIS ELLIMAN FINDLAY:

Fifty (50%) per cent thereof to my former wife, HELEN RICH FINDLAY.

In the event that either of them shall have predeceased me, then I give and bequeath the entire amount so due to the survivor of my wife, LOIS ELLIMAN FINDLAY and my former wife, HELEN RICH FINDLAY.

J. Wilfred Findlay bequeathed and devised the residue of his estate to petitioner.

By contract dated May 29, 1952, petitioner and Helen Rich Findlay agreed to accept $150,000 each from Willis, Faber & Dumas, Ltd., in satisfaction of the latter's obligation under the March 27, 1936, agreement. A supplemental agreement dated November 11, 1953, was executed by the same parties to modify the details of payment of the May 29, 1952, contract to state that petitioner and Helen Rich Findlay would receive $50,000 each on execution of said contract, $25,000 each on January 10 and December 10, 1954, and $50,000 each on January 10, 1955, provided, however, that if the British estate assets were insufficient to pay all British death duty on said estate, Willis, Faber & Dumas, Ltd., would pay to the ancillary administrator the amount so required to pay such deficiency and the last two payments would be reduced by that amount.

Petitioner received $50,000 in each of the years 1953 and 1954. In 1955, petitioner received $19,815.05 from Willis, Faber & Dumas, Ltd., which represented the final payment of $50,000 due her under the above agreements, less the sum of $30,184.95 withheld by Willis, Faber & Dumas, Ltd., pursuant to the supplemental agreement of November 11, 1953, and remitted to Schroder Executor & Trustee Co., Ltd., as ancillary administrator of the estate of J. Wilfred Findlay for payment of the British death duty.

A certification of United Kingdom estate duty dated June 3, 1954, was submitted to the district director of internal revenue, Manhattan, New York, N.Y., on August 9, 1954, by the executor of the estate of J. Wilfred Findlay certifying to the payment of $114,181.98 in estate duty to Great Britain. The certificate indicated that the rate of tax on the described assets (which included the value of the commission payments under the March 27, 1936, agreement) was 45 percent; and 45 percent of the valuation figure of such rights ($205,491.17) would be $92,471.03.

On August 24, 1956, petitioner, Helen Rich Findlay, Schroder Trust Co. (executor of the will of J. Wilfred Findlay), and the two trustees under an indenture of trust dated January 6, 1948, agreed to an apportionment of British estate taxes, Federal estate taxes, and New York estate taxes. It provided that "Upon the execution of this Agreement, Helen Rich Findlay has paid to the Executor the sum of $54,055.27 as the full net amount apportionable against her individually (after credit for amounts withheld to pay British estate duty out of moneys due Helen Rich Findlay from Willis, Faber & Dumas, Ltd.) with respect to British death duty and Federal and New York estate taxes,

on the bequest to her under the Will and also the one equal part of the trust fund payable to her absolutely."

The allocation of the British, Federal, and New York estate taxes among (1) petitioner, (2) Helen Rich Findlay, and (3) the 1948 *inter vivos* trust established by J. Wilfred Findlay (reserving the income to himself for life, and upon his death the trust fund to be divided into two equal parts, one part to be paid over to Helen Rich Findlay outright and the other half to be retained in trust with income to Helen for life and remainder to settlor's estate) was based upon the following computation:

| | Helen Rich Findlay | Trust | | Petitioner |
| --- | --- | --- | --- | --- |
| | | ½ outright | ½ rem. in trust | |
| United Kingdom estate duty | $15,404.96 | | | $98,777.02 |
| Interest | 861.12 | | | 5,521.52 |
| Federal estate tax | 30,048.04 | $32,088.44 | $17,548.87 | 47,296.72 |
| Less credits | (3,239.82) | | | (21,538.07) |
| Plus interest | 384.68 | 60.45 | 251.81 | 369.62 |
| New York estate tax | 3,981.01 | 4,251.34 | 2,325.02 | 6,266.27 |
| Less discount allowance | | | | (676.22) |
| Other taxes | | | | 223.56 |
| Total | 47,439.99 | 36,800.23 | 20,125.70 | 136,240.42 |

The amount of $54,055.27 mentioned above in the August 24, 1956, agreement was apparently computed by subtracting $30,184.95 (the amount withheld by Willis, Faber & Dumas, Ltd.) from $84,240.22 ($47,439.99 plus $36,800.23).

The Federal estate tax paid on the estate of J. Wilfred Findlay was $108,445.86, and the respondent has determined that the Federal estate tax attributable to the inclusion of the right to the Willis, Faber & Dumas, Ltd., commissions on the estate tax return amounted to $27,384.34.

By letter dated August 23, 1956, petitioner was notified by Willis, Faber & Dumas, Ltd., that notwithstanding the discharge of their legal obligations with respect to J. Wilfred Findlay's 1936 agreement they felt morally bound to make some further provision for her and Helen Rich Findlay in view of the income accruing to Willis, Faber & Dumas, Ltd., from the American business introduced by the decedent. A draft in the amount of $13,500 was enclosed, and petitioner received similar amounts in 1957 and 1958.

The board of directors of Willis, Faber & Dumas, Ltd., comprised all the ordinary shareholders of the firm.

These payments to petitioner were made pursuant to a resolution of the board of directors of Willis, Faber & Dumas, Ltd., which was passed on August 7, 1956, and stated, in part, as follows:

Arising out of his visit to New York, it was reported by Mr. G. B. Wilson that he had seen the solicitors representing Mrs. Helen Findlay and Mrs. Lois

Wright (formerly Findlay) and had undertaken to bring before the Board the question of making some provision for them in the future.

He reminded the Board that in 1951 a settlement had been made with the Findlay estate which took into account the fact that further payments would almost certainly have to be made to Findlay's dependants. This was considered to be necessary both in relation to the continuance of the business connections developed by the late J. W. Findlay and the preservation of the Company's reputation in the U.S.A. and the view then taken now appears to be confirmed. Accordingly it was

Resolved

that subject to any further resolutions of the Board on the matter, there be paid annually to Mrs. Helen Findlay $16,425 and annually to Mrs. Lois Wright $13,500.

Petitioner was never a stockholder in Willis, Faber & Dumas, Ltd., nor did she ever have any business connection with the organization. J. Wilfred Findlay was never an officer, director, or shareholder of Willis, Faber & Dumas, Ltd. Petitioner and decedent were close friends of several of the directors of the organization and their wives, visiting them at their homes in England, and also entertaining at home the directors and their wives on their frequent visits to the United States. Petitioner received many letters and telegrams after decedent's death from Willis, Faber & Dumas, Ltd.'s personnel, and also transatlantic telephone calls from F. Douglas-Whyte and Henry Dumas, both of them directors of Willis, Faber & Dumas, Ltd.

Petitioner did not include the payment of $50,000 received by her from Willis, Faber & Dumas, Ltd., in each of the years 1953 and 1954 and the payment of $19,815.05 in 1955 in her taxable income on her returns for those years. Respondent determined that the amount of $50,000 in each of the years 1953, 1954, and 1955 was includable in petitioner's income under sections 126(a) of the Internal Revenue Code of 1939 and 691(a) of the Internal Revenue Code of 1954.

Petitioner did not include in her reported income the amount of $13,500 received by her from Willis, Faber & Dumas, Ltd., in each of the years 1956, 1957, and 1958. Respondent included these amounts in petitioner's income for those years.

### OPINION.

This case is a companion case to *Helen Rich Findlay*, 39 T.C. 580, decided this day. The basic exhibits pertaining to the issues here involved are the same as those in the *Findlay* case. The basic issues are the same and the reasoning in that case is equally applicable here. There is nothing in this record that calls for a different result.

We hold that the amount of $50,000 includable in petitioner's income for each of the years 1953, 1954, and 1955 is income in respect of a decedent within the meaning of section 126 of the Internal Revenue Code of 1939 and section 691 of the Internal Revenue Code of 1954 and

that the petitioner is not entitled to a deduction in 1955 for the amount of $30,184.95 which was withheld by Willis, Faber & Dumas, Ltd., and remitted to the ancillary administrator for payment of the British estate duty.

We also hold that the amounts received by petitioner from Willis, Faber & Dumas, Ltd., in each of the years 1956 through 1958 were not nontaxable gifts within the meaning of section 102 of the Internal Revenue Code of 1954. However, for the year 1956, only the amount of payment in excess of $5,000 is includable in petitioner's income. Petitioner is entitled to the $5,000 employees' death benefit exclusion under section 101(b) of the Internal Revenue Code of 1954. This section provides that "Gross income does not include amounts received * * * [limited to $5,000] by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee." Respondent argues petitioner is not intitled to the exclusion because "it has not been established that the decedent was an employee of Willis, Faber & Dumas Ltd." We hold decedent's status as an employee was established.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

FORRESTER, *J.*, concurs in the result.